WILLIAM D. BRANCH, APPELLANT, VS. LITTLEBERRY BRANCH, APPELLEE.

1. Applications to set aside proceedings for mere irregularity, should be made as early as possible.

2. If the style of process is " The State of Florida," it is sufficient.

3. Upon the death of the testator or intestate, if any injury is afterwards done to his goods and chattels, the Executor or Adminis-

trator may bring an action for damages for the tort, and under the circumstances, he has his option either to sue in his representative capacity, and declare *as* Executor or Administrator, or to bring the action in his own name, and in his individual character.

4. When such a suit is brought by an Executor or Administrator, in his individual character, it is not necessary that there should be a bond binding the estate.

5. Whether such a bond is necessary where an Executor or Administrator sues in such a case, in his representative character *as* Executor or Administrator.    *Quere?*

6. In a suit by an Executor or Administrator, in his representative character, he must describe himself and make his claim *as* Administrator or Executor only; describing himself Executor or Administrator is mere *descriptio personæ*.

7. The statute declares that the plaintiff in replevin, *or* some other competent person *in his behalf*, shall execute the bond with good and sufficient security; it is not contemplated by the latter provision that the persons signing the bond shall bind any body but themselves.

8. Whether, therefore, an Executor or Administrator can, even in such an action as this, by proceeding as such Executor or Administrator, and executing a bond *as* such, bind the Estate.— *Quere?*

9. It is not necessary that the bond, in an action of replevin, should contain a description of the property, but the affidavit must describe it.

10. The value of the property as stated in the declaration, is not the criterion of the value of the property; it is the estimated value (by the Clerk, whose duty it is to approve the bond,) at the time the bond is given, and the plaintiff, by stating in his declaration a higher value, cannot invalidate the bond.

11. If the Clerk in approving the bond add to his name the word Clerk only, it is sufficient if the other proceedings which occured at the same time as the making of the affidavit, or the issuing of the writ, show of what Court he was Clerk, and that it is the same into which the writ is returnable.

12. Statutory bonds will, in general, be sustained as voluntary bonds, good at common law, although they may not be taken pursuant to the statute, unless the statute has expressly declared them void, or they have been obtained by fraud, or by coercion or oppersion, *colore officii.*

13. The Court may order a pluries writ, in an action of replevin under our statute, or the plaintiff may (in a proper case) cause one to be issued without an *order of the Court.*

14. By suing out an alias writ, the plaintiff waives (for the time being, at least,) his right under the statute to declare in trover or trespass.

Appeal from a Judgment of the Circuit Court for Marion County. For the facts of the case, see opinion of the Court.

*McQueen McIntosh and B. M. Pearson, for Appellant,*

*J. P. Sanderson, for Appellee.*

DOUGLAS, J., delivered the opinion of the Court.

William D. Branch instituted an action of replevin in the Circuit Court of Marion County, to recover a certain stock of cattle. He states in his affidavit that " he is Administrator of the Estate of Samuel E. Swilley, deceased, and that as such Administrator, he is lawfully entitled to the possession of a certain stock of cattle now in possession of Littleberry Branch, numbering about eighteen hundred," describing them and saying further "that the said cattle have not been taken for any tax assessment, or fine levied by virtue of any law of this State, or seized under any execution or attachment against the goods and chattels of this deponent, liable to excution." He also executed a bond in the penal sum of twenty thousand dollars to the said Littleberry Branch, with J. M. McIntosh and A. D. Johnson as his sureties, conditioned " that whereas the above bounden Wm. D. Branch hath this day commenced an action of replevin against Littleberry Branch for the recovery of certain cattle, more particularly described in an affidavit filed herewith. Now if the said W. D. Branch shall prosecute the said action to effect and without delay, and if the said Littleberry Branch should recover judgment against him in said action, shall return the said cattle, if return thereby should be adjudged, and shall pay the said Littleberry Branch all such sums of money as he may recover against him in the said action, for any cause whatsoever, then the above abligation is to be null and void, ortherwise, to be in full force and virtue." This bond was approved by the Clerk of said Court, the said affidavit and bond were filed in the office of the Clerk of the same Court, on the 20th of October, 1852, and both of them as well as the writ of re-

plevin, (which it seems immediately issued,) bear date on the same day. The Sheriff not having been able to execute this writ, an alias was issued, which also proving ineffectual, a pluries was issued which he returned "executed this writ by having hunted up and delivered to William D. Branch, Administrator, &c., six hundred and thirty-eight (638) head of cattle, of the marks and brands described in the within writ." It appears by the proceedings, that a summons was issued and duly served on the 1st. day of November, 1852.

The plaintiff filed his declaration December 1st., 1853, in the usual form, describing himself William D. Branch plaintiff in this suit, Administrator, &c., &c., and concluded by saying, wherefore the said plaintiff Administrator as afaresaid, saith that he is injured, and hath sustained damage to the amount of twenty thousand dollars, and therefore, &c., &c.

The next entry upon the record was made on the 7th of December, 1853, and is as follows, to-wit: "Now on this day came the parties, by their respective Attorneys, and this cause coming on to be heard, the defendants counsel moved the Court to quash the writ and declaration for a variance between the precipe, writ and declaration; and, also, moved the Court to dismiss the suit for want of a sufficient affidavit and bond, and because a pluries writ had been issued in said cause before declaration filed ; whereupon the Court having heard the argument of counsel, and having considered the matter, overrules the motion to quash said writ and declaration, but sustains the defendant's motion to dismiss said suit for want of a sufficient affidavit and bond, and therefore, it is ordered by the Court that the

said suit be and the same is hereby dismissed. Whereupon the plaintiff, by his counsel, prayed an appeal in open Court and on the same day. It appears by a subsequent order, that a bond having been duly executed and filed by the plaintiff, according to law, and the costs paid, the Court ordered "that the said prayer for an appeal be (and the same was thereby) allowed and granted." On the same day a writ of return and restitution of the cattle was ordered by the Court, and a jury was empanelled and sworn to assess the damages that the defendant had sustained, by the wrongful taking and detention of said cattle, and who found that the defendant had sustained no damage, &c., &c., which verdict was, on the 10th. day of the same month, set aside, and a new assessment of damages awarded.

On the 6th. day of December, 1854, the defendant, by his counsel, J. P. Sanderson and S. St. Geo. Rogers, presented to the Marion Circuit Court, the mandate of this Court in this case, and moved to vacate the judgment heretofore entered in this cause, which was done accordingly, and thereupon came the parties, by their respective attorneys, and a jury was empanelled to assess the said damages, who assessed the same at two hundred and seventy-five dollars, upon which verdict judgment was duly entered, and a return of the cattle aforesaid was awarded ; and thereupon, the plaintiff again prayed an appeal to this Court.

At the December term, 1853, the defendant's counsel moved the Court for leave to amend the record of this cause entered at the last Spring term of this Court, wherever said record shows that Rodgers, defendant's counsel, consented to the order therein entered, granting to plaintiff's counsel leave to issue a pluries writ, and further time for filing of

a declaration. "The Court having read the affidavit of S. St. Geo. Rodgers, defendant's counsel, and reference to the Bench Docket of said term having been had, and upon argument of counsel, it was ordered that said record be amended by vacating so much of said order, made at said Spring Term of this Court, as shows such order made at said Spring Term of this Court for a pluries writ, and further time for filing a declaration, to have been made by consent of S. St. Geo. Rogers, as defendant's counsel.

Two bills of exception appear in the record, but as they were not noticed in the argument of the case, we do not deem it necessary further to advert to them. Ten errors were assigned, all, however, but the first two and the last, were abandoned at the hearing. The three relied upon are as follows:

First. That the Court erred in entertaining the motion to dismiss the proceedings, and quash the said writ of replevin at the third term after the commencment of said suit, an appearance having been heretofore by the said defendant, entered at a previous Court, *to wit:* at the first term to which the same defendant was summoned.

Second. That the Court erred in deciding that the bond and affidavit filed in the above entitled cause, were insufficient, even not in conformity to law, and thereby dismissing the proceedings in the same, and quashing the writ of replevin.

Tenth. That the Court erred in allowing defendant's motion to amend the record in said case.

The case has been ably and ingeniously argued on both sides. It is contended on behalf of the appellant, that the proceedings are regular and correct throughout; that the

suit was commenced by William D. Branch, against Littleberry Branch, as appears by the precipe, affidavit and bond; that in the precipe, nothing is said of the plaintiff, designating him as administrator. That the affidavit states and sets out the grounds of his possessory right in the premises, and is signed by him; that William D. Branch, could not sue as administrator, but only in his own name. That he could not bind the estate (of Samuel E. Swilley,) by a bond, and must *necessarily* have proceeded as he did. That the bond is executed by him, in his individual capacity, and never was intended as an administrator's bond. That the recital in the affidavit, that the plaintiff was administrator, is merely "*descriptio personæ*," and may be treated as surplussage; that the addition of administrator in the writ, cannot invalidate it, and that it was not necessary in the, affidavit to state that the property sought to be repl evied was not taken for any tax assessments, or fine levied by virtue of any law of this State, or seized under any execution or attachment against the goods and chattels of the estate of Samuel E. Swilley, deceased; that the Court erred in entertaining the motion to dismiss the proceedings, and quash the said writ of replevin at the third term after the commencment of the suit, also in deciding that the bond and affidavit were insufficient.

For the appellee it is insisted that the suit was improperly commenced; that the precipe has no venue, that the affidavit does not conform to the requirements of the statute; that the jurat is defective; that the suit is at the instance of the administrator of the estate of Samuel E. Swilley, deceased, and that there is no bond given binding the estate; that the bond is not entitled as belonging to

any Court, nor shown in what Court the suit was institu-ted. That the bond does not contain a description of the property, and is not of double the value of the property, as alleged in the declaration ; that the bond is not approved as required by the statute ; that the writ should show that the affidavit and bond had been filed ; that the Court did not err in quashing the writ ; that the statute requires that all process shall run in the name of the State of Florida ; that this does not so run ; that the Court did not err in allowing the correction of the record, and that it had no authority to grant a pluries writ.

As to the alleged defect in the precipe, if such an ob-jection could be heard at all, it comes too late. Applica-tions to set aside proceedings for mere irregularity, should be made as early as possible. 3 Chitty's General Pr., 511 to 529. If not, it will be waived. 1 Tidd's Pr., 9, 165, 190, 403, 435. So as to the affidavit, that the jurat is de-fective, and as to the writ, that it does not run "in the name of the State of Florida." The appearance of the de-fendant was entered at the first term after the service of summons upon him, and no motion was made to quash any of the proceedings for any cause, until the third term. Nor does it appear that any of these objections were taken at all in the Court below. As to the style of the process ; the Constitution, article fifth, Section fifteen, Thomp. Dig., p. 325, No. 3, declares that the style of all process shall be "the State of Florida." The style of this process is "the State of Florida." This we think sufficient. The Con-stitution of Iowa, requires criminal proceedings to be conducted in the name of the State of Iowa, and it has been there held, that a prosecution in the name of the "State

Branch *vs.* Branch.—Opinion of Court.

of Iowa," was valid. Harrison vs. the State, 2 Green, 270, 6 U. S. Dig.. (1852,) p. 354, No. 52.

Many of the objections taken by the plaintiff's counsel in this case, seem to be founded upon the idea, that this is a suit prosecuted by William D. Branch, *as* administrator, &c., of Samuel E. Swilley, deceased. That however, is a wrong view of the matter. He prosecutes it in his own individual character. It is true, that in his affidavit, he, in order to show his right to the possession of the cattle in controversy, says, he is entitled to the possession of them, *as* administrator of Samuel E. Swilley, deceased, and in his declaration, he alleges that they belonged to, and were owned by Samuel E. Swilley, deceased, in his life time, and at the time of his death, "and that they were in possession of the said plaintiff, administrator as aforesaid, of Samuel E. Swilley, deceased," and in all the proceedings, except the affidavit, he either designates himself as William D. Branch, or as William D. Branch administrator ; the latter is mere *decriptio personæ.* He had a right to sue in his individual capacity. Mr. Williams in his able work on Executors, vol. 1, page 627, (side,) says, upon the death of the testator or intestate, if an injury is afterwards done to his goods and chattels, the executor or administrator may bring an action for damages for the loss ; and under the circumstances, he has his option either to sue in his representative capacity, and declare as executor or administrator, or to bring the action in his own name, and in his individual character ; and Carlisle vs. Beesley, 3 Greenleaf's Reports, 257 ; Patcher vs. Wilson, 4. Hill, N. Y., 57–8 B. Monroe's Reports, 521 ; Hollis, et al. Administrator, vs. Smith, 10 East. Reports, 293, and Ballane and

Wife, Administrator vs. Spencer, 7 term Reports, 358, are all to the same effect. In Watson vs. Pilling, 2 Bro. & B., 446, it was held that on *general process*, the plaintiff may declare against the defendant, *as* executor or administrator, and where the affidavit, (to hold to bail,) stated the debt to be due to the intended plaintiff *as* executor, but the process was *general*, the Court of Exchequer refused to order the said bond to be cancelled. Chitty's Plea Ed., 1840, page 251. And see Duval vs. Craig, et al. 2. Wheaton Reports, 545 ; 4 Peters Conds Reports, 29.

In 2 Williams on Executor's, side pages 1150 and 1151, it is said that the same declaration which contains counts on promises to the testator, may contain a count on an account stated with the plaintiff *as* executor, concerning money due to the testator from the defendant, or concerning money due to the plaintiff *as* executor, or a count for money lent by the plaintiff *as* executor, or a count for money had and received by the defendant to the use of the plaintiff *as* executor, or a count for money paid to the use of df't by the plaintiff *as* executor. So in a declaration in debt, a count on a judgment recovered by the plaintiff *as* executor, may be joined with counts on debts which have accrued to the testator. But (he says) it must be stated in the count, that the duty accrued to the plaintiff in his representative capacity of executor. It is not enough to say it accrued to him 'executor' or being 'executor,' *it must* be *averred* that it accrued to him *as executor*. And in Needham vs. Croke, Freeman's Reports, 728, it is said : " if an executor states an account with a debtor, he may, if he pleaseth, afterwards sue in his own name for this debt, for the stating of the amount raiseth a new debt.

Or he may sue *as executor*, as to naming themselves executors, it is only to deduce their rights *ab origine*; yet nevertheless, the cause of action arises entirely in his time, and since the death of the testator. And see 1 Salkeld, 207. This is an answer to the allegation, that there is no bond given binding the estate. The suit being by Wlliiam D. Branch, in his individual character, it is not necessary that there should be ; indeed it does not seem to be necessary where the executor or administrator *as such*, brings a writ, of replevin. The statute declares that the plaintiff, or some other competent person in *his behalf*, shall execute the bond with good and sufficient security . It does not contemplate by the latter provision that the persons signing the bond, shall bind any body but themselves. In Pinney vs. administrators of Johnson, 8 Wendell, 500, the Court said: "It seems to be well settled upon authority, that a judgment upon a bond or other security, given by an administrator or executor, though in his *representative character*, does not bind the estate, that the discription of the defendants in the bond *as* executors, is surplussage, and they are chargable upon such a bond and judgment in their own right; it is not a legal debt or judgment against the estate, and cannot be pleaded as such. Citing Seyer vs. Smith, 1 Dall, 247 1 Mod. Reports, 225 *ib*. 254, Croke Eliz. 406, 9. Coke, 93, 6. Mass. 58, and 8 *ib*. 199, (where this doctrine is very elaberately discussed,) 1 M. and S., 395, 7 Taunton, 580, and 8 Johnson, 120. It seems very doubtful, therefore (at least,) whether even in such an action as this, if the, appellant had proceeded *as* administrator, he could have executed a bond that would have bound the estate.

It is said further, that the bond does not contain a description of the property. The Statute(see Thompson's Dig. 388,) does not require that it should. It only requires that the affidavit should describe it. This it does. Again it is said that it is not in double the value of the property as *alleged in the declaration.* The Statute only requires "a bond with good and sufficient security in at least double the estimated value of the property to be replevied, conditioned &c. &c., to be approved by the Clerk" whose duty it is to see that a good bond is filed before he issues the writ. The estimated value of the property must there-fore be ascertained before the declaration is filed, and the plantiff cannot afterwards, by putting a higher value upon it in his declaration, invalidate his bond, and it would not be very safe for the defendant if he could. It is said again, that the jurat to the affidavit is defective, and that the bond is not approved as required by the Statute. This is because the officer who put his jurat to the affida-vit, and approved the bond, signed merely "Robert Bul-lock Clerk," and it is urged that this does not show that he was Clerk of Marion Circuit Court where the suit was in-stituted. But it appears from the record, that the affida-vit was made, the bond executed, and the writ issued on the same day, and in his test of the writ, he discribes him-self as Robert Bullock Clerk of the Circuit Court for Mari-on County. And the affidavit and bond were both filed in the office of the Clerk of that Court on the same day that they were made and executed, and it has not been alleged or pretended that there was or has been any other action of replevin between these parties in that Court. It would seem therefore, that there could be no difficulty in identi-

fying all these proceedings as connected with each other in this suit, and it not being denied (or pretended here) that he was such Clerk, (a matter of most easy ascertainment) we are clearly of opinion that the objection in regard to these matters (if in time) could not be sustained. In Whaling vs. Shales, 20 Wendell 673, M. T. Reynolds for the defendant moved to set aside proceedings in replevin³ on the ground that there was only one security to the bond to the Sheriff, citing 2, R. S. 527, Sec. 7,—R. W. Peckham for the plaintiff insisted that the remedy was by exception, not by motion. By the Court, Bronson J. The proceedings are irregular when there is only one securiy, (citing 18 Wendell, 581. and 19. ib. 632,) and it is going quite far enough to save the action, by allowing an amendment on payment of the costs of the motion. The proceedings must be set aside unless the plaintiff executes a sufficient bond nunc pro tunc and the securities justify. The case refered to in 19 Wendell 632, is Howley against Bates. In that case no penalty was inserted in the bond; and it had but one security, an and amendment was allowed. In Newland vs. Willetts 1 Bart. 20, it was also held that "where a replevin bond originally given is defective, a new bond may be filed "*nunc pro tunc.*" If this be sound law, and we are at a loss to see why it is not, then this suit should not have been dismissed for the insufficiency of the bond (had it been defective) if the plaintiff was ready and willing to give a new and sufficient one, "*nunc pro tunc.*" It may be very doubtful how far the non approval of the bond would affect its validity. In South Carolina it has been held that where a Statute requires the Sheriff to give bond to the Treasurer of the State, yet a bond to the Commissioners of

the Treasury was valid, and where the same Statute requires that Sheriff's bond should be approved by those Commissioners, before it should be accepted, and it was approved by two only, it was held that this neglect of the Sheriff could not be pleaded in bar of a suit against him for official mis-conduct. 2 McCord 107. And in King. vs. Gibbs 26 Wendell, it was held that it does not lie with the defendant (in a suit on such a bond) to object that the security was not approved by the Commissioners, that, the waiver of approval was injurious to the plaintiff if any body, that benefit they had a right to waive *quilibet potest renunciare jiri pro se introducto.*" But it is not necessary for us now to decide this point as we deem the approval under the circumstances sufficient, especially as more than a year had elapsed after it was executed and filed, before any objection was made to the sufficiency of the bond at all, and it does not appear that any objection was ever made to it on this ground until the present term of Court. If therefore, the objection had it been taken in time, had been valid it now comes too late. It has been often held that if a Sheriff voluntarily gives bond with sureties in a larger penalty than is prescribed by the Statute, they will be held liable for the breach of it. Stevens vs. Treasurers 2 McCord 107, and U. S. Dig. p. 442, No. 205, where Governor vs. Matchlock, 2 Hawks, 366. Johnson vs. Gwathmy 2. Bibb, 186. Treasurers vs. Bates, 2 Baily 362, and Stevens vs. Treasurers 2, McCord 107, are cited. So, if a bond is given in a penalty *less* than the Statute prescribes. Grimes vs. Butler 1 Bibb 192. 1 U. S. Dig. p. 442, No. 206. It was also held by the Court of appeals of Kentucky that where an execution was endorsed

"no security of any kind to be taken" the officer has no authority to take a forthcoming bond, and if he does, it will not be valid as a Statutory bond, although it may be good at common law as a protection to the officer. 7 B. Monroe's Reps. 289, 2 U. S. Dig. p. 59, No. 91. And in Virginia it was held that "though a bond be not good as a Statutory bond, it may be good at common law. Johnson vs. Merriweather 3 Call 523. And in Maine it was held that a Statutory bond to be good as such, must be conditioned and executed according to all the requirements of the Statute. But if it was not, it may be good at common law. Howard vs. Brown 8 Shepley 385, 2 Supp. U. S. Dig. 307 Nos. 34 and 35. And in New York, that a bond is not void merely because it does not in all respects conform to the Statute under which it was taken. It is absolutely void only when the Statute declares it void. Van Deusen vs. Hayward 17 Wendell 67. King vs. Gibbs 26, Wendell 502. These cases are sufficient to show that such objections are not favored by the Court. But the following are perhaps more conclusive. A replevin bond having been forfeited, by reason of the suit in the Superior Court not having been prosecuted with effect, it was held in the case of Stomfield vs. Halloway, 11, Eng. Law and Eqty. Reps. 559, that the bond though irregular, was not void, and that the plaintiff might sue upon it as a voluntary bond. And in Butler vs. O'Brien, 5 Ala. 310, it was held that "a bond given as a forthcoming bond, though not good as a Statute bond, it being payable to the Sheriff instead of the plaintiff, is good as a common law bond. 1 U. S. Digest, p. 327, No. 481. And in Speake et al vs. U. States 9 Cranch 28, 3 Peters Cond. Reps. 248, the Court

42

held that a bond taken by virtue of the embargo law of 1808 is *not* void although not taken pursuant to the Statute; there being no allegation or pretence that the bond was unduly obtained, *colore officii*, by fraud, oppression, or circumvention, it must therefore be taken to have been a voluntary bond. And in spite of all the objections made against this bond, even if it were not good under the Statute, we believe it would be a good bond at common law, but we see no objection to it under the Statute.

It is well settled however, that bonds of this kind, will in general be sustained as voluntary bonds good at common law, unless the Statute has expressly declared them void, or they have been obtained by fraud or by coercion or oppression *colore officii*. Nothing of this description has been alleged or pretended in regard to the bond under consideration.

It was insisted that the Court has no authority to grant a pluries writ, that there was no declaration filed and the cause stands dismissed by the rules of the Court, and Thompson's Digest p. 457, Sec. 6 and page 387, Sec. 3 are cited to sustain the proposition. This objection is founded upon this provision of the Statute above cited at p. 389, Sec. 3, of our replevin Law viz : "If the goods and chattels specified in the writ of replevin be not delivered to the plaintiff, and the defendant shall have been duly summoned, the plaintiff may either sue out an alias writ, or proceed by filing a declaration in trover or trespass, and thereby abandon his action of replevin." The writ in this Case was returned not executed &c., and the plaintiff caused an alias to be issued which was also ineffectual, and he

Branch vs. Branch.—Opinion of Court.

then caused a pluries to be issued which was executed. It has been urged that the Court had no "authority to grant a pluries writ." We entertain no doubt but that the plaintiff might have caused such writ to be issued, without an order of the Court, and until this writ was returned executed, he was not bound to file his declaration. This is a remedial Statute, and should be literally construed. Indeed, as it is but an extension of an old common law remedy, we need not perhaps invoke that principle to sustain this position. By suing out an alias writ the plaintiff waived (for the time being at least) his right to declare in trover or trespass. Whether if his pluries writ had also proved ineffectual he could have fallen back upon that right, as a last resource, is a question that may more properly be decided whenever it shall be directly pre sented.

Upon the whole, our view of this matter is, that the plaintiff had a right to declare in his representative character *as* administrator, or in his own individual character. It seems that he adopted the latter course; that the affidavit and bond are substantially good, that whatever irregularity may have existed in them, are cured by the objections to them not having been taken in due time that is as the books say, in the first instance; that therefore the *first* two errors assigned are not well taken, and consequently the *last* becomes immaterial.

Let the judgment and order of dismissal of the Court below be reversed with costs, and the case be remanded to that Court, and be there reinstated, that such proceedings

may be had therein, as to right and justice shall appertain, not inconsistent with this opinion.