Gilmer v. Bird.

JOSEPH GILMER, APPELLANT, VS. WILLIAM C. BIRD, RESPONDENT.

1. It is within the power of the Legislature to authorize notice of the institution of a suit to be given by an attorney or party, instead of through a writ issuing out of a court.

2. The summons authorized by the Code is not process within the meaning of that clause of the Constitution which requires that "the style of all process shall be 'the State of Florida.'"

Appeal from the Circuit Court for Jefferson county, Second Judicial District.

Joseph Gilmer, the appellant here, the plaintiff in the Circuit Court, sued William C. Bird in the Circuit Court of the Second Judicial Circuit, Jefferson county. The action was under the Code. The summons conformed in all respects to the requirements of the Code, and a copy thereof, with a copy of the complaint, was served upon the defendant.

Upon default of the defendant a judgment was entered by the clerk against him on the 28th of April, A. D. 1871.

On the 12th of December, A. D. 1873, a motion to open this judgment was made on the following grounds:

1. Because there was no process served on the defendant requiring him to answer the complaint in the action, and defendant did not appear by attorney or otherwise.

2. Because the pretended process or summons served on the defendant in this action had no style of process, to-wit:

Gilmer v. Bird.

"The State of Florida," as required by the Constitution and laws of this State.

This motion was granted, and it was "considered by the court that the judgment entered in this case is void for the reasons assigned," and it was ordered "that the same be set aside and vacated."

To this ruling an exception was taken, and upon this appeal its correctness is presented for the consideration of this court.

*R. B. Whitfield* and *S. Pasco* for Appellant.

There is only one ground upon which the action of the court can be sustained, and that is that the judgment was void; an absolute nullity. Was it void? The defendant rests his case upon the Constitution. "The style of all process shall be 'The State of Florida.'" (Art. 6, Sec. 2.) And to show that no one can be sued without process, it further adds: "No person shall be deprived of life, liberty or property without due process of law." Declaration of Rights, Sec. 8. It is owing to an entire misconception of the latter clause that the court has been lead into error. It is urged that the phrase simply means, in accordance with the law of the land or by due course of law, that it has no reference to the form of the summons, but to the entire proceedings in a cause, and requires that they shall conform to some fixed rule of law. 1 Bouvier's Law Dict., 512, Art. "Due Process of Law;" Cooley's Const. Lim., Chap. 11, 353–6 ; Sedgwick on Stat. and Con. Law., 474, 481, 574, 577. The Constitution does not prescribe the form of writs or require a defendant to be brought into court by service of process upon him, but authorizes the Legislative Department to regulate and direct the whole course of the judicial proceedings; and if it is here shown that the action was conducted in conformity to the law governing such cases, it is maintained that the judgment was not a nullity. 2 Am. Law Times, 37, Jan., 1875.

The summons in this action conformed to every require-ment of the statute, (Code, title 5, p. 28, Sec. 79,) and un-less that is unconstitutional, the judgment must stand. The summons was regularly served, and if it was defective, it is well settled that mere defects in obtaining jurisdiction will not render a judgment void; every presumption is in favor of the jurisdiction, and the court, through its clerk, passed its judgment upon the summons, and the judgment thus rendered is as valid as if pronounced by the court. Free-man on Judg., § 124–6; 2 Wallace, 341; Freeman, 126, note; 4 Minn., 473; Code, § 124. The defendant had his day in court and could have pleaded these alleged irregular-ities before judgment or within one year after its rendition, or he could have appealed within the proper time from the judgment, but with notice of the institution of the action he allowed it to go on without objection, and after the full pe-riod had elapsed for him to meet it in the ususal way, he brings these proceedings, based upon the ground that the judgment is a mere nullity. Although there can be no waiver of jurisdiction in regard to the subject matter, there can be of the person, (10 Peters, 450; Freeman on Judg., § 102, 119,) and it is urged that the defendant has waived all defects by his acts which are set forth in the testimony which was taken without objection and was not contra-dicted, and that estopped him from moving to open or set aside the judgment. Cooley's Con. Lim., 398; 20 Wis., 270.

The whole matter of jurisdiction and the different senses in which the word void is used, are presented at length by J. Bell in a New Hampshire case, 6 Foster, 232. The de-fect in a writ is there held to be such a defect as the party waives by delay, and it is held that a defendant will be for-ever precluded to make the objection afterwards. The sum-mons is not process, and under the Code a defect in it will not vitiate a judgment. If defective under the practice it will be considered as amended. 2 Bouv. L. D., 379; 11

Wis., 70; 3 Black., 279;.12 Minn., 80; Code, § 126–3; 1 Fla., 383; 6 ib., 724; 8 ib., 29.

There are similar requirements as to style of process in the organic law of other States, and similar questions have been raised by motion to quash the. writ by plea or otherwise, and though now and then a precedent may be found for the decision of the court below.in this case, such cases are against the whole current of authority, and have frequently been overruled by later decisions in the same courts. Many of these cases have been settled by the subsequent appearance of the ·parties, but in selecting the cases to be cited care has been taken to choose those where the decision was made without reference to such subsequent appearance. These cases, it is believed, support this proposition of law. . 13 Met., 478; 2 Pick., 592; General Stat. N. H., 32, Art. 87 of Const.; 19 N. H. 394; 32 ib., 87; Revised Stat. Wis., 39; 10 Wis., 95, 100; 11 ib., 70; 12 Mich., 216; 7 Eng., 537; Stat. Minn., 26, 35, Cons. Dec. Rights, and Art. 6, § 14; 12 'Minn., 83; 12 ib., 255, 264; Compiled Laws of Mich., 65, Const., Art. 6, Sec. 35'; 4 Mich., 579; 7 Mo., 163–5; 35 ib., 196; 4 Blackford, 140; 4 Green, (Iowa,) 42; 29 Md., 377; 12 Kan., 420.

If the omission from a summons of any formal particular required by the Constitution of the State is an error or defect, such error is not fatal, and the summons may be amended upon motion before judgment, and if an action proceeds to judgment without objection to the writ, the judgment will be sustained. Breese (Ill.,) 133; 7 Cal., 54, 64; 33 ib., 682; 5 Gilman, (Ill.,) 459.

In the case at bar no injury or injustice is done the defendant by sustaining the judgment; he does not deny the debt; he has admitted the validity of the judgment for years, and has sworn to its existence, and only comes forward to attack it when other and later judgments and other liens have encumbered his property so that a new judgment upon the same cause of action would be worthless if suit

had been brought anew upon the action of the court below; and now no action can be brought because the statute of limitations bars the note sued upon, so that the sustaining of the judgment appealed from can only work injustice and wrong upon the plaintiff, and deprive him of what is justly his, to the benefit, not of the defendant, but of subsequent incumbrancers. 13 Fla., 278.

Under such circumstances the courts act always with extreme reluctance in disturbing judgments. Freeman on Judgments, § 108.

*Papy & Raney* for Respondent.

The first and most important question for the consideration of the court is, whether a judgment for want of an answer, taken in the clerk's office under the provisions of the Code of Procedure, without an appearance upon the part of the defendant, is of any validity when the summons in the action was without the style of process prescribed by the Constitution of 1868. We respectfully submit that it is without validity.

The language of Sec. 2, Art. VI., is: " The style of all process shall be the State of Florida, and all prosecutions shall be conducted in the name of and by the authority of the same." Acts of 1868, p. 203.

The argument, we think, resolves itself into three questions:

1. What did the makers of the Constitution mean by the use of the word " process ?"

2. Is the summons provided for by the Code within the meaning they intended to convey?

3. Is the provision prescribing a style process mandatory upon, or discretional with, the courts ? . Is the style of process prescribed by the Constitution a mere matter to be dispensed with by the courts at their pleasure, or is it an essential to all process ?

I. To consider the first proposition, we must place our-

selves in the position of the framers of the Constitution to understand its meaning. They stood with the judicial system of the State of Florida, as provided by the common law, modified by the statutory system of the State then existing, before them. Sections 1, 2 and 3 of Article XV. show that system, whether growing out of legislation anterior to or pending the war, had come under their consideration and met their approval, except so far as any part of it was inconsistent with the Constitution of the United States, or that of the State. In the use of the word "process," then, they mean that anything in the course of a suit, from incipiency to conclusion, whether a creature of the common or the statute law, which under that system was process, and anything which in the future might be originated in lieu thereof, or substituted for it, to effect the same purpose, was and should be considered process. The words of the Constitution are to be construed as used in their ordinary sense, and the ordinary sense of the term in the State of Florida, or under its judicial system, is the sense in which the word "process" is presumed to be used by them.

In the construction of a Constitution, words must be understood to have been used in their ordinary sense. Cooley's Const. Lim., m. p. 58, 59; Story on Constitution, 452, 453; 5 Ind., 557.

Assuming that the above is correct, let us inquire if the means of commencing a suit, or, as we say in the usual phraseology of the law, the means of bringing a party into court, was, at the time of the framing of the Constitution of 1868, process.

By section four, Act of 1828, Thompson's Digest, p. 325, which statute was continued in force by the Constitution of 1868, and had been in force since its adoption in 1828, it is provided that when any person wishes to commence an action in any of the courts, he shall have the right to sue out his process either against the person or the estate of the

defendant; and when the same, i. e., the process, is in-
tended to be sued out against the person of the defendant,
it is provided that a capias or a summons ad respondendum
shall be made out by the clerk, upon the filing of a præ-
cipe by the plaintiff or his attorney. This section provides
that this capias or summons shall be called the original.

It is the process, and section seven of the Act of No-
vember 29, 1829, p. 326 of Thompson's Digest, provided
how all process shall be tested, etc., and particularly how
a summons ad respondendum shall be made returnable,
thus again recognizing it as process.

Section 15, Art. V., Constitution of 1838, provided that
the style of all process shall be "The State of Florida."
In Thompson's Digest of the Laws, this part of the section
is printed with the statutory provisions, showing it to be
the understanding of the codifier that the provision of the
Constitution applied to such suits as process. In different
sections of the above act of 1828, as will be seen on pages
326-7 of Thompson's Digest, this summons ad responden-
dum is spoken of as "original writ or summons," and
"original process," and "process;" and, in the form of a
subpœna, printed for the commencement of chancery cases,
page 450 of Thompson's Digest, this "style" is used. In
view of these facts, there seems to be no room to doubt that
the summons ad respondendum, which was the means in
use for bringing a party into court, or of commencing any
action against him personally, when the present Constitu-
tion was formed, was embraced within the meaning of the
word "process," in its ordinary acceptation as applicable
to judicial proceedings; and we feel forced to conclude
that, by the use of the term, the framers of the Constitu-
tion referred as much to the means of commencing a suit
as to any writ issued at any stage of the same.

To commence a suit against a person or his property, by
summons or attachment, one sued out his "process."

Again, we contend that if the framers of the Constitu-

tion were supposed, by the use of the term process, to have spoken solely with reference to the common law, (the usual resort for ascertaining the definition of terms,) that the writ, summons, or other agency which might be used for bringing a party into court, or commencing an action against a person, is within the term as used by them. If they spoke with reference to the common law, they meant the common law as it stood modified at the date as of which it was adopted by the State of Florida, and by the English statutes adopted with it. It is true, that in the early days of the common law, the first proceeding in commencing a suit in the court of common pleas was the original writ. This issued out of chancery, and was intended as much to give jurisdiction to the court as to notify the party of the commencement of the suit; it commanded him to satisfy the complaints, demands or appear in the court to which it was returnable.

In the King's Bench, also, the original writ was used; but Mr. Blackstone says the more usual method was by a peculiar species of process, entitled a bill of Middlesex, or, if the court set in Kent, a bill of Kent. This bill was a kind of capias requiring the sheriff to have the defendant at Westminster to answer the plaintiff of a plea of trespass, and was the fiction by which the jurisdiction of King's Bench was extended to civil causes generally.

In the days of Mr. Blackstone it was the usual practice, in the common pleas, to sue out a capias, in the first instance, upon a supposed return of the sheriff, and afterwards draw up a fictitious original writ, if the party was called upon to do so, with a proper return thereon, in order to give the proceedings a color of regularity. Book 3, m. p. 282. The same author, in speaking of process in the King's Bench, says: "But, as in the common pleas, the testatum capias may be sued out upon only a supposed and not an actual preceding 'capias'; so in the King's Bench a latitat is usually sued out upon a supposed and not an actual

bill of Middlesex; so that in fact a latitat may be called the first process in the Court of King's Bench, as the testatum capias is in the common pleas. Yet, as in the common pleas, if the defendant lives in the county wherein the action is laid, a common capias suffices. So in the King's Bench, likewise, if he lives in Middlesex the process must still be by bill of Middlesex only." Book 3, m. p. 286. In Tomlin's Law Dictionary, Title Process, it is said that the common mode of commencing actions in the Court of Common Pleas was by capias quam clausum fregit, founded on a supposed original answering to the bill of Middlesex or latitat of the King's Bench. Mr. Blackstone, on m. p. 287 of same book, again says, if the sheriff had found the defendant upon the capias or latitat, etc., he was anciently obliged to take him into custody and produce him in court upon the return; for he was considered in contempt for not having obeyed the original summons—meaning the notice served by the sheriff. But, says he, when the summons fell into disuse, and the capias became in fact the first process, it was thought wrong to imprison a man for a contempt which was only supposed; and therefore, in common cases, by the gradual indulgence of courts, (at length authorized by 12 Geo. I., 29, and amended by 5 Geo. II., and made perpetual by 21 Geo., II.,) the sheriff can now only serve the defendant with a copy of the writ or process, and with notice in writing to appear by his attorney in court to defend the action, which, in effect, reduces it to a mere summons. If the defendant appeared upon this notice, he put a common bail, John Doe and Richard Roe being his sureties; and if he did not, the plaintiff entered an appearance for him, filed the common bail in his name, and proceeded thereupon as if the defendant had done it himself.

This was the practice at this time, when the plaintiff did not require special bail and resort to imprisonment for debt. Book III., 587. And the result was not to compel the defendant to appear in court, as would be inferred from

Mr. Blackstone considering process as the means of compelling his appearance, but merely to lay the basis for proceeding in the action, which was nothing more nor less than the purpose and service of a summons under the Code.

By the practice, then, we see that the capias and the notice together was the first step towards commencing an action, or the means of obtaining judicial relief against the defendant, and they constituted the process, under the common law, as modified by the English statutes, which our laws had adopted.

Under the title "Process," Tomlin's Law Dictionary, after giving the mere general definition of the word, it is said that that is termed the process by the means of which a man is called into any temporal court, because it is the beginning or principle thereof by which the rest is directed— or, taken strictly, it is the proceeding, after the original, before judgment; and under the same title in which he explains the manner in or process by which actions were commenced in the different courts, he states that the subpoena ad respondendum, a "process" directed to the defendant, analogous to the subpoena in chancery or equity side of the exchequer, was one of the modes of commencing an action in the Exchequer Pleas. In this court nothing corresponding to the "original" writ was used. This author deals with the different means of commencing actions in the several courts as process. In Branch vs. Branch, 6 Fla., a writ of replevin is also recognized as process by the Supreme Court of Florida. 6 Fla., p. 314.

II. This brings us to our second proposition as to whether or not a summons, under the Code, is within the meaning of the term "process," as used in the Constitution? It serves the same offices that a summons ad respondendum did before its adoption and does since its repeal. By the service of it alone could jurisdiction of the person be had in commencing any action, and without it no judgment against the person could be rendered. It is the equivalent

of an appearance. (Sec. 90.) It was, like the summons ad respondendum, the process against the person. In sections 47 and 48 it is spoken of as "process."

It has all the effect which the process used in the common law, as modified by the courts, and modified by the English statutes adopted by Florida, had. If it is not process, what is it, and why is it not? No purpose that it serves removes it from within the pale of process.

The only reason urged is, that it does not issue out of the clerk's office or court, but is issued by the attorney or the party plaintiff; and, to support this argument, they say that the clause in the Constitution only meant writs issued out of the court or its clerk's office. The Constitution does not so say, nor give any definition what process is. If issuance from a court or clerk's office is the test, it cannot be denied that the Legislature could soon make the clause in the Constitution a nullity by providing that attachments, subpœnas and all other writs, shall be issued by attorneys or parties.

By the Code, prior to the amendment of 1872, executions were issued by the attorney or party, and no style of process was required, either before or after the amendment, by the terms of the law. No warrant or writ issued from the clerk's office in actions of replevin, or claim, or delivery.

It would have taken but little ingenuity to make similar provision in case of subpœna and all existing writs.

The execution under this argument was a process after the amendment, and not before, though it served the same important purpose in both. Applying the meaning intended by the makers of the Constitution, as before shown, to the purpose of the summons under the Code, it seems to us to be a process, and nothing else.

Tomlin says original process to call persons into court must be in the name of the King, (III., p. 324,) and our Constitution thus gets the idea of a style of process from the common law. The language of the Constitution is, "all process"—not original process, but *all process*.

III. Is the style of process an essential to process?

In Curtis vs. McCulloh, 3 Na., the court says: "The Constitution declares that the style of all process shall be the State of Nevada."

"The State is the sovereign by whose power alone the citizen can be compelled to appear in its courts to answer an action brought against him."

"There is no other authority by which the courts can obtain jurisdiction."

"In the matter, we are satisfied the defendant would have lost no right by a refusal to obey the writ because of the informality suggested, to-wit, want of style of process." See also 6 Fla., 322; 1 N. H., 139; 5 Ark., 104; 5 Gilman, 96; 1 Ark., 50, 132; 4 Miss., 27; 5 Miss., 229.

In construction of the Constitution, the courts have simply to declare what the Constitution has said. 5 Ind., 557.

WESTCOTT, J., delivered the opinion of the court.

Section 9 of the Declaration of Rights, contained in the Constitution of this State, provides that no person shall be deprived of life, liberty or property without due process of law. Section 2 of Article 6 of the Constitution provides that "the style of all process shall be 'The State of Florida.'" The term, process, as used in these two sections, has not the same signification. In the first it is used in a large and comprehensive sense. In the second it is used in its most restricted and limited sense. Says Baron Comyn, "Process, in a large acceptance, comprehends the whole proceeding after the original and before judgment, but generally it imports the writs which issue out of any court to bring the party to answer, or for doing execution and all process out of the King's Courts, ought to be in the name of the King. It is called process because it proceeds or goes out upon former matter, either original or judicial."

The cases in which the terms, due process of law, have been defined, are various in their nature, and the definition

in each case has been, to some extent, controlled by the nature of the subject undergoing judicial investigation. As applied to judicial proceedings the meaning is, "that every citizen shall hold his life, liberty, property and immunities under the protection of general rules which govern society. By due process of law is most clearly intended the general law which hears before it condemns, which proceeds upon enquiry and renders judgment only after trial."

This clause does not prohibit the Legislature from establishing a general rule of practice by which notice of the institution of an action may be given by an attorney or party. It has never received such a construction by the courts. Where such an enactment is general and applies to all actions and to all individuals, as is the case of the Code, such notice by an attorney is in conformity to the law of the land, and a judgment depriving a party of his property after such notice is, in contemplation of law, a deprivation by due process of law. Whether the notice given by the attorney be process or not, it is, for the reasons given, within the power of the Legislature, so far as this clause is a limitation, to authorize notice to be given in this manner.

It is contended that such summons as is authorized by the Code is process within the meaning of the constitutional provision, which requires the style of all process to be "The State of Florida;" that in this case the summons ahd no such style; that this was essential to the validity of the judgment, there having been no appearance, and that the order setting it aside as a void judgment was correct

Even if this summons was "process" within the meaning of the Constitution, the failure to insert the formal style required would only have been an irregularity, a misprision of the clerk, and amendable. The style of process is its title, and the title of process in civil cases has been a subject of amendment from a very early period in English history. That a *formal* requirement as to process is made by the Constitution is no more binding upon the court than if

made by an act of the Legislature, and is equally the subject of amendment in one case as the other. 2 Pick., 594; 32 N. H., 88; 15 N. H., 37; 7 Ark., 536.

Under the first English statute of amendment, (14 Ed. 3–6,) if not at common law, the title of process was amendable, (8 Co., 158; 1 Com., 579,) and the justices under subsequent statutes were authorized to amend process so long as such record was before them, *as well after judgment* as before, and it was not the practice to reverse a judgment for such misprisions of the clerk, but they amended the process in affirmance of the judgment. These statutes are in force in this State. Thompson's Compilation British Statutes, 13 to 40.

Our conclusion is that, even if this summons was process within the meaning of the Constitution, the defect here was merely formal; that the judgment was not void, and that if the court had any power over the judgment at a succeeding term it was to amend the process in this matter, and that it was error to set the judgment aside. 10 Wis., 100; 2 Pick., 594; 32 N. H., 88; 19 N. H., 394; 12 Kan., 422; 35 Mo., 197; 1 Fla., 381; 8 Fla., 29; 6 Fla., 322.

But is a notice given by an attorney of the institution of a suit in a form similar to a summons, but not issuing out of a court, a process within the meaning of the Constitution? Baron Comyn, in giving the definition of the term process, says it imports the *writs which issue out of any court* to bring the party to answer or for doing execution. There is no definition of process given by any accepted authority which implies that any writ or method by which a suit is commenced is necessarily process. A party is entitled to notice and to a hearing under the Constitution before he can be affected, but it is nowhere declared or required that that notice shall be only *a writ issuing out of a court.*

In the States in which has existed a Code similar to the one under which this action was brought, we find the courts

of last resort holding that such notice or summons need not be entitled or styled in the name of the State, although the constitutional requirement is substantially the same as ours in regulating the style of process. 12 Wis., 529; 4 Iowa, 43; 4 Mich., 588; 3 Penn., 99; 12 Min., 86.

The order setting aside the judgment as void is reversed.