## WILLIAM TWEED *vs.* HORACE METCALF.

Although it is not competent for one to acquire a cumulative title to lands by allowing them to be sold for delinquent taxes, after he has taken possession of them by virtue of a tax deed, he may bid upon the same lands at a tax sale, before the time of redemption under his former purchase has expired, and have the benefit of such bid.

The warrant of the Supervisor to the Township Treasurer, authorizing him to collect taxes, is not void by reason of not being "in the name of the People of the State of Michigan." The provision of the Constitution in respect to process, applies only to process issued by Courts, or some judicial officer.

Where an amount was reassessed upon a township, on account of errors in the assessment of the previous year, the board having authority to reassess under the assessment law of 1845, such reassessment will be good, in legal presumption, until some error is shown.

It is competent for a township to vote to raise moneys for building bridges upon the report of the Highway Commissioners, as provided by Section 4, Chapter 3, Tit. 1, Part 1, of the Revised Statutes of 1838. So, also, by virtue of Section 3, of said Chapter, to raise money for the destruction of Canada thistles; and this may be regarded as a highway tax. It is also competent for the township, under the section last cited, to raise a sum for contingent expenses generally, without specifying for what purpose each particular sum is raised.

The Counties had power to sell lands, delinquent for school taxes, under the school law of 1843.

The fact that the assessment of a township was placed at two different sums: first, in the roll as made by the Assessor, at one sum, and subsequently in the tabular statement of the Supervisors at another, is not material; and, therefore, the roll is not void for that reason.

The certificates of the Assessors and the chairman of the Board of Supervisors, do not, in legal contemplation, form a part of the assessment roll. Therefore, proceedings under a roll not having such certificates, are not void for that reason.

The failure of the Collector to make a statement, under oath, of all moneys received by him as Collector, under Section 41, page 74, Act 1843, does not render the proceedings to sell, void; such oath is required to secure an accurate accounting of all the moneys in the Collector's hands, and has no reference to the return of lands for delinquent taxes.

It is competent for the Board of Supervisors to reduce the aggregate of the assessments below that of the Assessors.

Where lands are assessed as non-resident, the Treasurer of the township has no power to levy upon any property to satisfy a tax so assessed.

There was no limitation under the law of 1843, as to the quantity of the delinquent land that might be sold for taxes. No presumption of fraud can be raised on account of the quantity so sold.

Case reserved from St. Joseph Circuit.

This was an action of ejectment, brought by Tweed against Metcalf, to recover possession of lands in the Town of Constantine, St. Joseph County, and was tried at the December term, 1853, by the Circuit Judge, without a jury. The plaintiff proved a title to the premises in himself, derived through intermediate grantors, from the Government, and also the occupation of the lands by the defendant since 1848.

The defendant gave in evidence, a deed from the Auditor General of the State of Michigan to him, of the same lands, dated March 18, 1848, for the delinquent taxes upon the same, for the year 1844, under a sale made October 5th, A. D. 1846; also offered in evidence, another deed of the Auditor General to the defendant, for the same land, dated February 21, A. D. 1849, for delinquent taxes of 1845, under a sale made October 4th, 1857; also a deed from the Auditor General to the defendant, of the same land, dated January 10th, A. D. 1850, for delinquent taxes of 1846, on sale made October 3d, 1848. The two last deeds were received in evidence, subject to exception by plaintiff. The defendant then rested.

The plaintiff offered in evidence, the original assessment rolls of the Township of Constantine, for the years 1844, 1845 and 1846; also the Township Treasurer's tax roll of said township for the same years, and the records of the Board of Supervisors of the Township of Constantine. It appeared that the land was assessed as non-resident, for each of said years; also, that the Supervisors' warrant, attached to said roll, was not "in the name of the People of the State of Michigan." It was also shown that the Board of Supervisors, in equalizing the assessment of real estate in the

several townships of St. Joseph County, in each of said years, reduced the aggregate valuation originally made and returned to the board by the assessing officers.   No copy of the certificate of the Assessors, and no copy of the certificate of the chairman of the Board of Supervisors attached to the several assessment rolls, was contained in any of the Township Treasurer's tax rolls for said years.   It further appeared, that the Township of Constantine, at the annual township meetings, in each of said years, voted a sum of money "to pay the contingent expenses" of said township.   It also appeared, from the record of the Board of Supervisors for the year A. D. 1844, that the equalization of each township for that year was first separately entered thereon, and that the Townships of White Pigeon and Fawn River, in such separate entry, were equalized—the former at $61,082, the latter at $24,716; that, by a subsequent order, the equalized value of real estate of all the townships of the county, with the name of the township appended to each township equalization, was made up in a tabular form, and an aggregate placed at the bottom, which tabular statement was headed by an order, as follows, to wit:

"Ordered, that the amounts specified and set forth under their appropriate headings, in the following table, be, and the same are hereby declared to be the amounts of the asesessment of real estate of the respective townships, to which the said amount, under the head of real estate valuation, is set opposite, as equalized and corrected by the Board of Supervisors for said County, for the year 1844."

In this tabular statement, the towns of White Pigeon and Fawn River were entered as equalized—the former at $61,214, and the latter at $24,716.14; and, by a further order of the board, the taxes of said year, in the county, were apportioned and levied on the aggregate of said tabular statement. It was further shown, that the sum of $74.87 was charged back on the Township of Constantine, for the year 1844, on

account of errors in assessments of previous years in said township. It was further shown that the township of Constantine, at the annual meeting in 1844, voted to raise $175 for finishing the bridge across St. Joseph River, in the village of Constantine. It was also shown that the school tax, set opposite the land in question, was in the column of school taxes, which column was headed "delinquent school tax;" the amount of said school tax being fifty cents.

It was also shown, that the Township of Constantine, at its annual meeting in 1846, voted "the sum of twelve dollars, to be raised and placed in the hands of the Highway Commissioners, to be expended under their direction in the destruction of the Canada thistle." It was further shown on the part of the plaintiff, that twenty acres of said land was enclosed in 1841, and portions of it cultivated by persons living in the neighborhood; also, that a crop of wheat was sown upon said land; that in 1846 a crop of corn was raised on the land; that no person ever resided, nor has there ever been any house, barn, or other building on said land; that the plaintiff and his grantor had, for twenty years and more, resided in Pennsylvania, and still resided there.

It was further proven, that there was no statement, under oath, made by the Township Treasurer of Constantine of all moneys received by him as Collector, under the Act of 1843, page 74, Section 41, filed in the County Treasurer's office for said years 1844, 1845 and 1846.

It also appeared from the records of the Board of Supervisors, that in the years 1844, 1845 and 1846, the aggregate of real estate in said county was changed in equalizing as above stated—the rolls not being changed, nor ordered to be changed, so as to correspond with said equalization in the individual assessment of real property—they remaining the same; and the tax, or per centum, levied for State, county and township purposes, was collected upon the original valuation of real and personal property, as returned by the Assessors;

and no change made in the roll, except the usual certificate of equalization was added ; but the roll of the Township of Constantine, for the year 1846, was equalized by being made to stand as returned by the assessing officers. It appeared, also, that the Highway Commissioners of Constantine reported, that a certain sum had been expended in repairs upon the bridge at Constantine, and that a certain sum, over and above previous expenditures, would be required to put the bridge in complete repair ; but there was no other report to be found on file relating to the appropriation of such further sum. Upon the above facts, several questions were reserved for the determination of this Court. They will sufficiently appear in the opinion.

*Gurney & Bishop*, with whom was *J. B. Howe*, for plaintiff, as to the question of the occupancy of the premises (upon which, however, owing to the imperfect statement of the case, the Court did not pass), cited the following, viz. : Fish *vs.* Brown, 5 Watts, 441; Comstock *vs.* Beardsley, 15 Wend., 348; Brewster *vs.* Hough, 10 N. H., 138; 6 Watts & Serg., 475; McKee *vs.* Lamerton, 2 Ib., 107.

2. As to the question of cumulative deeds : 4 Kent, 98: Jackson *vs.* Roberts, 1 Wend., 478; Douglass *vs.* Dangerfield, 10 Ohio R., 158; Ex parte Stevens, 4 Cow., 133.

3. As to the point, that the warrant to the Township Treasurer did not read "in the name of the People of the State of Michigan." (*Const. in R. S.* 1838, *p.* 40; 2 *Comst.*, 473; 10 *Barb.*, 290; 4 *Cow. & Hill*, 203; *Alrich* vs. *Alrich*, 8 *Metc.*, 102.)

4. As to whether, under the equalization of 1844, 1845 and 1846, the tax should have been collected on the original assessment, or on the assessments as equalized and corrected by the Board of Supervisors. (*Laws* 1843, *p.* 68, *sec.* 22; *R. S.* 1838, *sec.* 4, *p.* 84.)

5. As to the point, whether the record of the Board of Supervisors for the year 1845, showing a reassessment of

$74 upon the Township of Constantine, did not render the tax illegal for that year. (*Laws* 1843, *p.* 81, *secs.* 68 *and* 70.)

6. As to the power of the township to raise money for contingent expenses. (*R. S.* 1838, *p.* 57, *sec.* 3.)

7. As to the want of signature to the warrant for the collection of the taxes of 1846. (*Doe* vs. *Himelick,* 4 *Blackf.,* 496; 9 *N. H.,* 525.)

8. As to the authority of the township or county to return and sell lands for delinquent school tax. (*Laws* 1843, *p.* 70, *sec.* 26.)

9. As to the failure of the Collector to make a statement, under oath, of the moneys collected by him. (*Act* 1843, *p.* 74, *sec.* 41.)

10. As to whether, under the laws in force in 1844, 1845 and 1846, the Board of Supervisors could reduce the aggregate of the assessments below that of the Assessor. (*R. S.* 1838, *p.* 83, *sec.* 14; *L.* 1843, *p.* 68, *sec.* 20.)

11. As to whether the taxes of 1844, 1845 and 1846, should not have been levied of the crops grown on the premises, or of the goods and chattels of the tenant cultivating the land. (*Francis* vs. *Washburn,* 3 *Metc. & Perk, Dig.* 294; *L.* 1843, *p.* 62, *sec.* 6.)

12. As to whether a sale of eighty acres to raise the sum of $1 or $2, was not fraudulent or void. (*Reed* vs. *Carter,* 1 *Blackf.,* 410; *Tierman* vs. *Willson,* 6 *J. C. R.,* 411; *Reed et al.* vs. *Carter,* 3 *Blackf.*; *O'Brien* vs. *Coulter,* 2 *Blackf.,* 421.)

*H. H. Riley,* with whom were *Upson & Steele,* for defendants.

1. The land was not occupied within the meaning of the act at the time of its assessment. (*L.* 1843, *Act* 49, *secs.* 12, 38; 2 *Bovier, L. D.* 241, *title "occupant;" Comstock* vs. *Beardslee,* 15 *Wend.,* 348.) Moreover, the Assessors, in making out their rolls, exercised a discretionary, if not a *quasi* judicial power, and their acts cannot thus be over-

William Tweed *vs.* Horace Metcalf.

thrown. (*Libley* vs. *Smith*, 2 *Mich. R.*; *Weaver* vs. *Devendorf*, 3 *Denio*, 117; 4 *Barb.*, 7, 11; *Van Rensaelaer* vs. *Witbeck*, 7 *Barb.*, 133 ; *Van Rensaelaer* vs. *Cottrell*, *Ib.*, 127.) However so much they may have erred in the performance of their duties, their error may be corrected in a Court of Review, but cannot render their proceedings void. (1 *L. Raymond*, 580; 2 *Salkeld*, 145; 6 *Wend.*, 564; 2 *Ib.*, 508; 18 *Ib.*, 198; 10 *J. R.*, 430; 7 *Cow.*, 58; 3 *Denio*, 117.)

2. The defendant is not obliged to rely upon his first tax deed. The doctrine of merger is not applicable. *Taxes delinquent* are not an *estate*. (4 *Kent Com.*, 99, 100, 101; 1 *Wend.*, 478.)

3. As to the style of the warrant -to the Township Treasurer, the constitutional provision applies only to judicial process. (2 *Bouvier's L. D.*, 373, "*process;*" 3 *Penn. R.*, 99; 1 *Paine R.*, 368; 3 *Black. Com.*, 279.)

4. The tax of 1844, 1845 and 1846 was properly collected on the original assessment, and not the equalized assessment of the Supervisors. Any other plan would be illegal and impracticable.

5. The reassessment did not invalidate the tax of 1845. The reassessment was authorized by statute. (*L.* 1843, *p.* 81, *sec.* 70; *L.* 1845, *p.* 85.)

6. The town has power to raise money for contingent expenses, highways, &c., without a report of the Commissioners of Highways. (*R. S.* 1838, *p.* 57, *sec.* 3; *L.* 1842, *p.* 22 ; *L.* 1843, *p.* 87, *sec.* 25.) The improper raising money for want of jurisdiction may have been ground for issuing a writ of prohibition, but cannot be objected to in this action. (4 *Wend.*, 486; *Ib.* 418.)

Upon the several other points raised, the counsel for the defendants cited no authorities.

By the Court, JOHNSON, J.

This is an action of ejectment, and the defendant relies upon

74

three tax title deeds. Fifteen distinct questions are reserved for the opinion of this Court. The facts upon which these questions are propounded, are so imperfectly stated in some instances, as to render it impossible to give an opinion. The practice of reserving so many questions in one case, without regard to the particular suit in which they are reserved, can result in no good. These questions are of some importance to the public, and it is practically impossible to give each question that careful and thorough examination they would be likely to receive, if only so many were examined as would be necessary to decide the case.

We will, however, consider them in their order.

And, first: "Whether said land, at the time it was assessed, was occupied in the meaning of the Act requiring land to be assessed in the name of the occupant."

The facts do not sufficiently appear to enable us to decide this question. It is said in the case, that about twenty acres of the land in question was enclosed in 1841, and that a portion of it was cultivated by persons living in the neighborhood during the years 1844, 1845 and 1846, but that no person ever resided, nor has there ever been any house, barn or building on said land, and that the owner has always resided in the State of Pennsylvania.

It is important, in deciding this question, to know whether those persons who cultivated this land, resided in the township where the same is situate, for if they did, it should have been assessed to them.

There is something in the phraseology of the statute which would seem to favor the idea urged by counsel, that to authorize an assessment of lands to a tenant, he must actually reside upon them. The term used, however, is "occupant," and to be an occupant, it is not necessary that he should have his home upon the premises ; and there is no reason why a person living upon his own lands, cultivating and raising

crops upon other lands not his own, situate in the same township, should not be liable to have such lands assessed to him as an occupier, the same as if he actually resided upon them; and this construction is very much strengthened by section 17 of the tax law of 1843, which requires the Assessors to assess all lands in their township, which are not occupied and not claimed to be owned by any resident of said township, as non-resident lands—implying that if it is occupied, it must be assessed to such occupant, if he resides in the township.

But we cannot infer these occupants resided in the same township, from the fact that they resided in the neighborhood, and therefore, we cannot certify as to this point.

The second point is, whether the defendant "must not rely upon his first tax title deeds."

This Court decided in the case of Lacey *vs.* Davis & McFarren, that it was not competent for a person to acquire a cumulative title to lands, by allowing them to be sold for delinquent taxes assessed after taking possession of the same by virtue of a tax title.

But the question in this case presents no serious difficulties. The defendant relies upon titles acquired by the sale of the premises in question for delinquent taxes, of the years 1844, 1845 and 1846, and it so happened that his bid for the year 1846 was some two days before the time of redemption had expired on his bid for 1844; so, at that time, he was under no obligation to pay the tax. The reason of the case of Lacey *vs.* Davis & McFarren, had its foundation in the obligation of a person to pay taxes on property in his possession, and which he professes to own. But that obligation did not exist in this case. The defendant having the right to bid, there can be no reason assigned why he should not have the benefit of it.

If the time of redemption had expired, and he had been entitled to his deed before his last bid, it would have presented

an important question ; *one* that has not been decided by this Court, and *one* of which we wish to express no opinion.

The doctrine of merger contended for by counsel, can have no application here, unless they admit that the defendant has the superior title ; in that case they admit here a good defence, for they cannot consistently say that the defendant has no title, and yet insist that the lien created by his subsequent bids has merged in his superior title. We must, therefore, certify upon this point, as the opinion of this Court, that the defendant is not bound to rely upon his first tax title deed.

The third point is : "Whether the tax rolls are not void, the warrant to the Township Treasurer not being in the name of the People of the State of Michigan."

This is a provision of the Constitution of 1835, and it is insisted by counsel, that the common law definition of process, is a writ issued by some Court, or officer exercising judicial powers, and that the Supervisor is neither one nor the other; that he is a *corporation sole;* and further, that the term process, was intended to mean such writs as should become necessary to be issued, in the exercise of that judicial power created and established by said Constitution ; and such was the construction of a similar provision in the Pennsylvania Constitution (*see* 3 *Penn. R.*, 99), and we think both positions are well taken.

Let it be certified, then, that the tax rolls are not void, for the reason that the warrant was not in the name of the People of the State of Michigan.

The fourth point is, "whether, under the equalization of 1844, 1845 and 1846, the tax should have been collected on the original assessments, or on the assessments as equalized and corrected by the Board of Supervisors." Here, again, the record is defective.

From an examination of the case, it is difficult to determine what precise question was intended to be submitted to this Court, for the case does not show whether the taxes were

collected upon the one assessment or the other. As an abstract proposition, we suppose that the tax must be collected upon an assessment (if an assessment roll is meant here), after the same has been equalized and corrected, by the Board of Supervisors; because it is not until after this is done, that the Supervisors, respectively, have the authority to extend the tax upon their respective rolls.

But, it would seem from the case, and particularly from the argument of counsel, that this question was designed to elicit some opinion in reference to the manner in which the board shall exercise the power of equalization.

Section 20, of Act No. 49, of the Session Laws of 1843, provides, "that the Board of Supervisors of each county, shall, at their session in October, in each year, examine the assessment rolls of the several townships in the county, for the purpose of ascertaining whether the relative valuations of the real estate in the townships respectively have been equally and uniformly estimated; and if, on such examination, they shall deem such valuation to be relatively disproportioned, the said Board of Supervisors shall equalize the same by adding to, or deducting from the valuation of the real estate of any township, such per centum as may, in their judgment, produce, relatively, an equal and uniform valuation of the county."

It is evident, from this section, that the board make no alteration of the assessment roll, in the exercise of the power here conferred. They have nothing to do with the equalization of real estate as between individuals. It is only as between the respective townships, and this is only for the purpose of furnishing *data* for assessing or levying upon the townships the State and County tax, after the Board have equalized by adding and deducting, as aforesaid, they have the data by which they can equally assess the tax; for, as the aggregate of the whole value of the real estate of the

county, thus equalized, added to the personal property, is to the sum total to be 'assessed, so is the aggregate of each township to the sum to be assessed thereon, and it is immaterial whether the aggregate of the valuation, as equalized, corresponds with the aggregates as contained in the assessment rolls, for it is only the relative value that is sought; and, after the amount to be levied is thus ascertained, it may as well be extended on the original assesssment roll as on a new one, corresponding with the equalization. By this method, each township bears its proper proportion of the public burden, and, as it must be supposed that each Supervisor will justly appraise the property of each individual according to its relative value, it follows that each individual does the same.

The respective original assessment rolls, of course, furnish no evidence of the action of the board in this particular, and it is only by an examination of their own records, that it can be ascertained whether the valuation of the real estate of a particular township has been changed.

What has been said will probably enable the Court below to decide the real question in the case; but nothing can be certified on this point, for the reason that there is no definite question raised upon the facts found.

The fifth point is, "whether the record of the Board of Supervisors for the year 1845, showing a reassessment of $74 upon the Township of Constantine, does not render the tax illegal for that year."

Section 81 of the Act above cited, authorizes the Board of Supervisors, in certain cases, to reassess rejected taxes upon specific lands, or upon townships, as they may consider just, and the record in this case says, " that it appeared from the record of the Board of Supervisors, that the sum of $74.87 was charged back upon said Township of Constantine for 1844, on account of errors in assessments of previous years in said township."

William Tweed *vs.* Horace Metcaif.

What the errors were, does not appear, and as the presumption of regularity is with the defendant until otherwise shown by the plaintiff, the Court will presume that the board acted within the scope of their authority, until it is made to appear otherwise, and such does not appear from the records of this case. Therefore, it must be certified, that there is nothing in the record showing the reassessment of the $74 to be illegal.

The sixth point is, "whether the township has any power to raise money by tax for contingent expenses, or for highway and bridge purposes, without the report of the Commissicners of Highways recommending the same, or to raise and apply a sum of money towards the extinction of the Canada thistle."

This question involves the legality of the assessment of three distinct items, and we can see no force to the objection urged to two of them. The sum of $175, raised by a vote of the electors at the annual township meeting, to complete the bridge, was founded upon the report of the Highway Commissioners to the Township Board, as provided by Sec. 4, Ch. 3, Title 1, part 1, of R. S. of 1838.

The power to raise this money was vested in the electors of the township, if anywhere.

The authority of the County Commissioners to assess this tax by virtue of section four of said chapter three, last above cited, was never transferred to the Board of Supervisors, and although it was made the duty of said County Commissioners, under said last named section, to assess the tax, it is more than doubtful whether they could do so short of a vote of the electors; for I have been unable to find anything in these statutes authorizing them to assess any tax for township purposes, not certified by the township authorities. However that may be, section three, chapter one, title four, of said statute, clearly confers the power upon the township; so also, by this section, is the power conferred upon the township to

raise the said sum of $12, placed in the hands of the Highway Commissioners, for the destruction of Canada thistles. This may be regarded as a highway tax.

The third item specified in this proposition, admits of more doubt. It appears from the record, that, during each of the years of 1844, 1845 and 1846, the electors of said township, at their annual meeting, voted a sum of money (the amount not specified) "to pay contingent expenses," and it is insisted that a township has no authority to raise a sum for indefinite purposes. This involves the construction of the section three last above cited, which reads as follows : "Townships shall have power at every legal meeting, to grant and vote such sums of money as they shall judge necessary for the purpose of supporting and maintaining the poor, and for all other necessary and proper charges arising in the township."

Now, the object of this power hereby conferred upon the townships, is to enable them to raise a sufficient sum of money to meet the ordinary expenses of township government, and, if the position of counsel be true, it then follows that the vote or resolution must specify for what *use* or *purpose* each particular sum is raised, and no sum could be raised for any other purpose than the one designated, and this would lead to the necessity of keeping as many distinct funds as there *are* objects of expenditures. This mode of proceeding, to say the least of it, would lead to great perplexity and inconvenience. On the other hand, if these objects of expenditure need not be specified, there seems to be an almost indefinite and unlimited power conferred. There is, perhaps, after all, but little danger of this power being abused, for the electors of a township have the power of knowing from the report of the Township Board and the other officers of the township, the precise condition of the pecuniary affairs of a township, and, if an indefinite sum is raised to meet the ordinary expenses of the township, and any unlawful appropriation is made of any part thereof, by any of the officials of the town-

ship, the law in that case affords a sufficient remedy. On the whole, we think it should be certified upon this point, that the township has the power to raise the sum for the purposes therein specified.

The seventh point is, "whether the County Treasurer's sale book of lands, sold for delinquent taxes of 1844, does not show that the land in question was redeemed."

In reference to this point, the record states that, "the plaintiff offered in evidence the County Treasurer's sale book of lands, delinquent for taxes of 1844, claiming an erasure opposite said lands, which said book is made a profert by consent."

This book has never been exhibited to this Court, and, if it had, I am not aware that any legal presumption is to be raised from an erasure opposite the land. Whether the land has been redeemed by the payment of the tax of 1844, is a question of fact, and being such, it must be decided by the Court below.

The eighth point is, "whether the warrant to the Township Treasurer, appended to the tax roll of 1846, is not void for the want of the signature of the proper officer."

The warrant would be void without a signature of course, but it does not appear from the record that it had no signature. This is what is stated in the record, viz.: "The Supervisor's warrant attached to the Treasurer's tax roll of said township for the year 1846, did not appear to have the Supervisor's name subscribed thereto. Defendant claimed, that from the appearance of the paper where the said warrant was written, said warrant was mutilated, which roll is made a profert by consent."

So that this point also involves but a question of fact, whether said warrant has been mutilated, which, for the reasons before stated, this Court will not decide.

The ninth point is, "whether the County or township had any authority to return and sell lands for delinquent school tax."

75

The record shows in the assessment roll of 1845, to which the warrant was attached in the proper column, and opposite the land in question, a school tax of fifty cents.

And, it is insisted by counsel, that there was no authority at that time for selling lands for delinquent school tax. We have very carefully examined the statutes upon this point, and we think there is nothing in the objection.

The Legislature of 1842, Act No. 19, abolished the office of County Commissioners, and conferred the duties of that office upon the Board of Supervisors.

In 1843, there was a general revision of the school law, by which law the mode of collecting taxes was changed. Up to that time the school taxes had been collected by an officer of the district.   By that Act it was transferred to the Collector of the Township, to be collected with the other taxes of the township.

By the first subdivision of section 22 of said School Act, No. 50, it became the duty of the School Board to make out and deliver to the Supervisor of the Township a report in writing, under their hands, on or before the second Monday of October, in each year, of all the taxes voted by the district during the year preceding such second Monday of October, to be raised on the taxable property of the district, and all taxes which said board were authorized to impose on such taxable property.

By the ninth subdivision of section 28 of said Act, it became the duty of the Township Clerk, acting in the capacity of Clerk of the Township Board of School Inspectors, to certify to the Supervisor of his township, certain other taxes to be assessed upon the property of school districts.

Then, section 43 of said Act provides as follows, viz.: " It shall be the duty of the Supervisor of the Township to assess the taxes voted by any school district of his township, and also, all other taxes provided for in this Act, chargeable against such district or township, on the taxable property of

the district or township, and to place the same on the township assessment roll in the column .for school taxes, and the same shall be collected, and returned by the Township Treasurer in the same manner, and for the same compensation as State and County taxes."

By section 38 of the Act No. 49, it became the duty of the Township Treasurer, upon the return of his warrant to the County Treasurer, to make out a statement of the taxes remaining unpaid and due, with a full and perfect description of the same from his tax list, verified by his affidavit, and submit the same to the County Treasurer, whose duty it was to file the same in his office.

By section 47 of said Act, it became the duty of the County Treasurer, prior to the first of March succeeding the receipt of such return, to transmit the same to the Auditor General.

And, by the 56th section of said Act, it is declared that the land so returned, if not redeemed by the first of September following, shall be subject to sale, and subsequent provisions of said Act specify the manner in which they shall be sold.

Thus, we think that the power to sell lands for delinquent school tax, unless some important provision of the ·statute has been overlooked, is clear and unquestionable, and let it be certified accordingly.

The tenth point is, "whether the equalization of 1844 is not defective and void, because the assessment of White Pigeon was placed at $61,082, and also at $61,214."

This question assumes a state of facts which does not appear from the record. There is nothing in the record showing that the assessment was placed upon these two sums. It shows that the assessment of the tax was based' upon an equalization by the Board of Supervisors, whereby White Pigeon was valued at the last named sum, $61,214. The record does not show that it was first separately entered at

the former sum of $61,082, but in the subsequent tabular statement made up and entered, it was set down at $61,214.

If there is any presumption to be drawn from this record, it is, that this sum was changed by the action of the board. But suppose it was a mistake, is it of any importance? If it was a mistake, the effect was simply to impose a heavier tax on the Township of White Pigeon, and consequently a lighter one on Constantine than was designed by the board. In that case, the tax assessed to these lands for the year 1844, was a trifle less than it would otherwise have been.

Let it be certified upon this point, then, that the equalization is not defective and void, by reason of its appearing upon the record, that White Pigeon was placed at the two sums above named.

The eleventh point is, " whether the fact of the Collector's roll not containing copies of certificates of Assessors and chairman of Board of Supervisors, does not render the proceedings defective and void."

The first inquiry is, whether, by a fair construction of the said Act of 1843, these certificates, or either of them, are to be considered as constituting a part of the assessment roll ; if so, they should be copied off into the Collector's roll, for, by the 26th section of said Act, it is made the duty of the Supervisor, among other things, to deliver to the Township Treasurer, on or before a given time therein specified, "a copy of the corrected assessment roll of his township," with the taxes annexed as therein described ; and by section 27, he is required to attach his warrant to said roll, directing the Treasurer to collect the several sums, etc. This copy of the assessment roll, with the warrant attached, constitutes the authority of the Collector to collect the taxes therein specified. Now, without stopping here to inquire into the object to be effected by this mode of proceeding, we wish carefully to examine this Act, to see if we can learn in what sense they

have used the term, "assessment roll." For, if they have uniformly used this term, as expressive of the same idea, the construction is already given, and we have nothing to do but follow it.

Sections 17 and 18 of said Act, prescribe the manner in which the Assessors shall assess the property of their respective townships; then follows the language of section 19, as follows, viz. : "When the Assessors shall have completed the assessment roll, they shall attach a certificate thereto in the following form, which shall be signed by them," giving the form of the instrument. Here, then, the Legislature have used the term, "assessment roll," as expressive of a thing completed and perfected before the certificate is added.

So in section 20, it is said : "The Board of Supervisors of each county shall, at their session in October, in each year, examine the *assessment rolls* of the several townships, etc. So again, in section 22, it is said, after the *assessment roll* of each township shall have been equalized and corrected by the Board of Supervisors, a certificate, signed by the chairman of the board, shall be made upon, or appended to the roll of each township, in the following form, etc. Here, again, the term is used in the same sense, and the certificate is treated as something appended to, and not constuting a part of the assessment roll.

It may be urged, that the word "corrected," as used in the section first above cited, wherein the Supervisor is required to make a copy, is a qualifying word, having reference to the instrument. And so it is. For by section 21, the County Board are required to correct the several rolls of the county, and, therefore, this word well expresses the instrument thus acted upon by the board, and not the certificate which is the evidence of that action.

This shows then, we think, in what sense the Legislature have used this term, and that when they required the Supervisor to make a corrected copy of the assessment roll, they did not

thereby include the certificates. And this view of the subject corresponds with what was said in the opinion delivered in the case of Sibley *vs.* Smith (2 *Mich. R.*, 487). And perhaps, it would not be going too far to say, that that case virtually decides this question. The objection in that case was, that the assessment roll had not been signed by the Assessors. In answer to that, it was insisted that the certificate was a sufficient authentication of the instrument, and his Honor, Judge Wing, who delivered the opinion, says : "It seems to be admitted, that but for the signatures to the certificate attached to the roll, it would not be of any validity; but the certificate is no part of the assessment roll ; it is not required or authorized to be attached until the roll is complete. In all that is required to give it validity, and make it an authentic exposition of the judgment of the Assessors, it is to follow as a distinct act after the roll is made."

If this Court, in that case, could have regarded the certificate as constituting a part of the assessment roll, then the difficulty arising from the want of the signatures of the Assessors would have been obviated, and the proceedings would have been sustained in that particular ; so it cannot be otherwise considered than as an authority in this case.

The authority principally relied upon in the foregoing opinion, is found in the case of Van Renselaer *vs.* McCulloch and Shook (7 *Barb. S. C. R.*, 133), wherein it was held that a tax, charged by the Board of Supervisors, upon the persons and property specified in the assessment roll, was not invalid by reason of a defective certificate, if the assessment itself was, in all respects, conformable to law ; and the conclusion was based upon two grounds : first, that the certificate was no part of the assessment roll ; and second, that the statute requiring such certificate was only *directory*.

These are the only cases to which our attention has been called, having any direct bearing upon the point, and we are

satisfied that, by a fair construction of the Act before cited, no copy of the certificates is required to be made.

This view of the case is very much strengthened by reference to the purposes for which this copy is made. The object is not to furnish conclusive evidence to the Collector that all the preliminary proceedings required by law have been had, and that the *Assessors* and Supervisors, when acting as a board, and in their individual capacity, have in all respects performed their duty. He cannot have any such evidence; he would not have it if the certificates were added, because the law has furnished no mode of authentication. It is true, the law requires that the Supervisor shall make a true copy, but the law does not require that he should furnish any evidence to the Collector that it is a true copy; not even a certificate is required. The whole paper may be forged, and not in any manner affect the Collector (without actual notice at least); and why? Because his authority to collect is not derived from this source, but from his warrant; if that is fair upon its face, he has the power, and is protected by it; if not, it affords him no protection. And this copy roll constitutes a part of that warrant, and the same as if it was embodied in the warrant, it gives him the information necessary to collect the tax, the names of each individual taxed, the amount of their taxes respectively, and the amount belonging to each separate fund. And that is all there is of it. A copy of these certificates would give him no information of any practical use; they are about matters of which he has nothing to do.

Let it be certified then, upon this point, as the opinion of this Court, that said proceedings are not defective and void by reason of the Collector's roll not containing copies of the certificates of the Assessors and chairman of the Board of Supervisors.

The twelfth point is, "whether the failure of a Collector to make a statement under oath of all moneys received by him

as Collector, under section 41, page 74, Act of 1843, renders the proceedings defective and void."

By the provisions of said section, the Township Treasurer is required, before a given time therein specified, to settle with the County Treasurer concerning the moneys collected by his warrant. He is therein directed to retain in his own hands certain amounts for township and other purposes, and the balance pay to the County Treasurer, and he is required to make out a statement under oath of all the moneys collected by him, which statement is to be filed with the County Treasurer.

This oath is required to insure an accurate accounting of the money in his hands, and upon which his settlement with the County Treasurer is based ; it is for this purpose and no other ; it has no reference to the return of lands for delinquent taxes. By section 47, it is made the duty of the Collector to make out for the County Treasurer a certified statement of unpaid taxes, on the lands of residents and non-residents.

It is *this* statement or list of lands which is certified to by the County Treasurer, and forwarded to the Auditor General; and it is upon *this return* of the Township Treasurer upon which all subsequent proceedings for the sale of lands for delinquent taxes are founded, and not from the return and settlement of the Township Treasurer, as provided for in section 41; consequently it can be of no importance to the owners of lands that such affidavit is made.

We are, therefore, of the opinion that the proceeding to sell the lands in question are not defective and void by reason of the failure of the Township Treasurer to make such affidavit.

Let it be certified accordingly.

The thirteenth point is, " whether under the laws in force in 1844, 1845 and 1846, the Board of Supervisors could reduce the aggregate of the assessments below that of the Assessors."

William Tweed *vs.* Horace Metcalf.

This question is answered by what we said in answer to the fourth point.

Let it be certified, that the Board of Supervisors could reduce the assessment roll below that of the Assessors.

The fourteenth point is, "whether the taxes of 1844, 1845 and 1846, should have been levied of the crops grown on the premises, or of the goods and chattels of the tenant's cultivating the land."

These lands were assessed as non-resident lands, and the Treasurer has no power to levy upon *any* property to satisfy a tax assessed upon lands taxed in that manner.

Let it be certified accordingly.

The fifteenth point is, "whether it was not erroneous to sell the whole of the premises in question for the sum of $3.20 in the year 1844, for $5.20 in 1845, and for $4.87 in 1846 ; and whether such sales are not fraudulent and void."

It was decided in the case of Sibley *vs.* Smith, before cited, that by the laws of 1843, there was no limitation to the quantity that might be sold, and we think no presumption of fraud can be raised from such facts.

Let it be certified, then, as the opinion of this Court, that such sales are not fraudulent and void, for the reason specified in said point.

Present, JOHNSON, GREEN, DOUGLASS, COPELAND, J. J.