# OCTOBER TERM, 1876.

---

## James P. Chapman v. Charles Dease.

*Lumbering contract: Failure of performance: Both parties in default: Damages: Profits.* Under a lumbering contract the vendor, who has come short of complete performance and detained some logs that were ready for delivery, is held not entitled to recover for profits which would have accrued to him had he cut and delivered the contract quantity of logs, upon the claim that he was disabled from getting the full quantity by reason of the purchaser's failure to advance as he agreed.

*Lumbering contracts: Plaintiff in default: Logs delivered and appropriated: Measure of recovery.* Where under a lumbering contract the purchaser has been in fault in the times and amounts of his advances, but which have nevertheless been received, and the vendor has been in fault in the quantity and quality of the logs delivered, which, however, have been accepted and appropriated by the purchaser, the vendor may recover the value, not exceeding the contract price, of the logs so delivered and accepted and not paid for by the advances, less any damages suffered by the purchaser by reason of the vendor's default.

*Quantum valebat: Limit of recovery: Contract price: Value.* The limit of recovery in such case could not exceed either the contract price or the true value at the time and place of delivery and acceptance.

*Quantum valebat: Basis of recovery: Contract.* The recovery on the *quantum valebat* for the value of chattels delivered and accepted in pursuance of a contract which the plaintiff has failed to completely perform on his part, is not based on the contract, but upon the benefit which the defendant has received from the appropriation of the property of the plaintiff.

*Quantum valebat: Measure of damages: Recoupment.* The plaintiff's recovery in such an action being upon the basis of the true value of the property delivered and accepted, the defendant would not be entitled by way of recoupment to have this value reduced by the excess in value of the contract quality, but would be permitted to set up a counter claim for the difference between the contract price and the market value of the contract quality of the amount so delivered.

*Quantum valebat: Logs: Sales: Advances: Recoupment: Damages.* A vendee in a lumbering contract, who has failed to make advances according to his contract, cannot, when sued by his vendor on the *quantum valebat* for logs delivered and appropriated, recoup damages for the non-delivery of logs which by such default the vendor was disabled from delivering.

*Log contract: Percentage of uppers: Scaler.* The contract in question, providing that the logs shall be "No. 1 and 2 in quality and free from defects, and are at least to run twenty-five per cent. into the upper qualities,"

and be "scaled as fast as banked, by some person to be mutually agreed upon," is held not to empower the scaler to go into the percentage and to conclude the parties in that respect by his scale.

*Heard June 14.    Decided October 4.*

Error to Saginaw Circuit.

*Holmes, Collins & Stoddard,* for plaintiff in error.

*Thompson & Tarsney,* for defendant in error.

GRAVES, J:

These parties entered into a written contract of the following tenor:

"This agreement, made this twenty-first day of August, A. D. 1874, between Charles Dease, of Lakeport, St. Clair county, Michigan, of the first part, and James P. Chapman, of Bay City, Michigan, of the second part, witnesseth:

"First party agrees to sell, and hereby does sell, to second party from one to two million feet of white pine saw logs, at and for the price of nine and one-half dollars per thousand feet, delivered to the Cass River Boom Company.

"First party agrees to cut, haul, and put said logs into the east branch of White creek, and into the south branch of Cass River during the ensuing fall and winter, and to deliver them to the said Cass River Boom Company, as early as possible in the spring of 1875.

"Said logs are to be cut in lengths as directed by said second party, and are to be No. 1 and 2 quality, and free from defects, and are, at least, to run twenty-five per cent. into the upper qualities; said logs to be marked as fast as banked, and with such marks or mark as second party may direct; said marking to be by stamping into the end of each log.   And said logs, as fast as cut, are to be and remain the property of said second party.

"Second party hereby buys said logs at said price, and for the purpose of enabling first party to commence operations, and to carry on said cutting, hauling, etc., agrees to

make the following advances to first party, viz. : One thousand dollars down ; one thousand dollars on the first day of October next ; one thousand dollars November first ; one thousand five hundred dollars December first ; one thousand five hundred dollars January first next ; one thousand five hundred dollars February first ; one thousand five hundred dollars March first ; one thousand five hundred dollars April first ; and one thousand five hundred dollars May first, 1875. And said second party hereby agrees to pay any balance there may be due for logs delivered, after deducting said advances, in three equal payments of two, four and six months from said May 1st, 1875.

"Said logs to be scaled as fast as banked, by some person to be mutually agreed upon. First party to pay second party interest at the rate of ten per cent. per annum, on all advances made as aforesaid, from the time each advance is made until all said logs are delivered. And it is hereby agreed and mutually understood that above advances are on the basis of first party delivering two million feet of contracted pine saw-logs as aforesaid, and in case, by the first day of March next, there should not have been banked and marked as aforesaid more than one million feet of contract logs, then, in that case, said March advances, and all advances thereafter, are not to be made ; but first party is to receive any balance there may be due on logs delivered, in three equal payments of two, four and six months as aforesaid ; and in case more than one million feet should have been delivered by said March first, and still an amount not equal to two million feet, then, and in that case, there is to be a *pro rata* deduction on said March advance and all advances thereafter. But in case the amount banked by said March first equals one and a half million feet of contract logs, then all advances to be made as aforesaid.

"Said logs are to be cut from lands owned by first party, described as follows : north half of north half of section twenty-nine ; south half of south half of section twenty-one ; east half of northeast quarter of section fourteen ; west half

of southeast quarter of section fourteen, and southeast quarter of southeast quarter of section fourteen; northeast quarter of northeast quarter of section twenty-three; southeast quarter of northeast quarter of section ten; northeast quarter of southeast quarter of section ten; west half of northeast quarter of section ten; south half of northwest quarter of section ten; northwest quarter of northwest quarter of section ten; northeast quarter of section fifteen; east half of northwest quarter of section fifteen; northwest quarter of southeast quarter of section fifteen; northeast quarter of southwest quarter of section fifteen; northeast quarter of northeast quarter of section thirty; northeast quarter of northeast quarter of section twenty-two; southeast quarter of southwest quarter of section twenty-two; all in town twelve north, of range twelve east. And a portion of said logs are to be purchased by first party of others.

"(Signed)          CHARLES DEASE,
                   JAMES P. CHAPMAN."

Dease sued by attachment in May, 1875, and declared for goods sold and delivered, and added two special counts on the written contract.

By these special counts he sought to recover for profits which would have accrued to him in case he had obtained the contract quantity of logs, and which he was disabled from getting, as he claimed, by Chapman's failure to advance as he had agreed.

Chapman pleaded the general issue and gave notice that he should insist that the logs sued for were sold to him under the written contract referred to; that the whole quantity of logs actually delivered did not exceed 950,000 feet; that before suit he had advanced and paid eight thousand and twenty-one dollars, including interest; that the logs so furnished, instead of being number one and number two in quality, and free from defects, were inferior thereto and ran below twenty-five per cent. to the uppers, and not to exceed eighteen per cent.; that in consequence he suffered damage

to the amount of five thousand dollars, which he should claim to recoup.

The written contract was thus drawn into the controversy by both sides and was admitted.

Considerable testimony was adduced in connection with the special counts, but as we understand the record the jury were instructed that no recovery was allowable upon them, and this was proper.

Dease's right to recover was therefore left to depend upon the existence of a state of facts sufficient to support the common count, and under the judge's rulings the jury gave him a verdict for three thousand eight hundred and seventy-seven dollars. Each party accused the other of a substantial breach of the special agreement, and also insisted that the charge against himself was sufficiently explained and answered, and the claims and counter claims were confusing. There is no question but that both parties entered upon performance of the express contract and respectively fell short of compliance with its terms. Chapman's agreement was absolute to advance in given sums and at named dates before March 1st, 1875, the sum of seven thousand five hundred dollars. He actually advanced a large amount, but less than he promised, and not at the times or in the sums specified. Dease actually delivered a large quantity of logs, but not as many as he promised to deliver, and in fact he retired from the contract. He claimed that Chapman's default in advancing justified him in stopping, and Chapman retorted that Dease assented to the course taken as to advances and waived objections. Chapman further claimed that the non-delivery of 27,000 feet of the logs banked and scaled was not explained at all, and was certainly not owing to want of funds. The record indicates, though not plainly, that whether or not Dease assented to Chapman's course respecting advances, was submitted to the jury and found in Dease's favor. But the point is unimportant now, because on this record it must be taken that the non-delivery of the 27,000 feet was not caused by want

of money, and hence was not owing to any default of which Chapman was guilty concerning advances. As the record is understood, only 960,000 feet, at the outside, passed the scaling, leaving 40,000 feet short at that stage, and the 27,000 feet, being parcel of the scaled 960,000 feet, was kept back on delivery, making a total deficit of 67,000 feet. On any theory this 27,000 feet should have been delivered. Dease's position was, *first,* that he had procured these logs, had banked them, that they had been scaled, and that they actually conformed to the contract, and that nothing remained but to hand them over; and, *second,* that the effect of Chapman's failure to advance as agreed was not to disable him from handing them over with those actually delivered, but it was to prevent him from cutting, hauling, and delivering 400,000 feet and over of his own timber, which, in fact, he did not get at all, and to induce him subsequently and finally to abandon the contract. Hence there was no excuse in theory or fact applicable to this 27,000 feet.

Now by the very terms of the contract the logs as fast as cut were to become and remain the property of Chapman, and any abandonment of the contract by Dease could only consist in abstaining from delivery of logs Chapman already owned. The logs would still belong to Chapman. Neither his default nor Dease's abandonment could change the title back to Dease. Dease had, then, delivered under color of the contract a large amount of logs, but less by sixty-seven thousand feet than the contract called for, and had refused to go further, and for the non-delivery of twenty-seven thousand feet of this deficit there was no shadow of excuse. The logs actually delivered had been received by Chapman and applied to his use. At the same time he had advanced in furtherance of the contract large sums of money, but not as much in the aggregate as the contract required, or in the sums or by the times specified. Dease had accepted this money and applied it to his own use.

In this state of things Dease was at liberty to base a claim for the value, on Chapman's acceptance and appropri-

ation of such logs as were actually delivered, whatever their quality; but the principle permitting him to do so would require the application of such rules as would hinder the remedy from leading to unwarrantable results.—*Wilson v. Wagar*, 26 *Mich.*, 452; *Allen v. McKibbin*, 5 *Mich.*, 449; *Kearney v. Doyle*, 22 *Mich.*, 294; *Begole v. McKenzie*, 26 *Mich.*, 470.

We have seen the agreed price was nine dollars and fifty cents, but this was to be due only for logs of the prescribed quality and after delivery, and Dease could recover no more than the contract price in any event for the logs he did deliver. He could only recover this much in a suit for damages on the contract, brought upon full performance; and being in default, as he certainly was as to quantity, if not likewise as to quality, he can be no better off in his suit on the common count for value.

His counting on the contract is not very consistent with his claim of having abandoned it.

Under the demand made by the common count the contract price fixes the outside limit; but the very nature of the demand in this form requires that the amount shall be ascertained upon the basis of true valuation at the time and place of acceptance of the very logs delivered, and this true value, if less than the contract price, must be the actual limit. Dease is restricted to the contract price in any contingency, and is absolutely restricted to the true value in the contingency of that being less than the contract price.

Against the amount so ascertained upon the principle of valuation, Chapman must have allowances.

*First,* as to the advances. In the understanding of the parties these advances were to be ten per cent. loans until delivery, at which time they were to apply as payments. These, with the agreed interest, should be allowed to Chapman.

*Second,* as to allowances for defect in quality. The ascertainment of the true value of the logs delivered, necessarily involved the ascertainment of their real quality, and

as the action was for this value, a determination of the fact of actual quality was hence requisite on this side of the case. Again, the existence of the alleged falling short in quality from the contract requirement, the extent of it, and the allowance proper on account of it, were matters to be ascertained under Chapman's counter claim.

It was urged by Dease, and ruled by the judge, that by force of the contract clause concerning the scaling the doings of the scalers operated as a conclusive decision that the logs which they approved were sufficient to run twenty-five per cent. to uppers, and hence that this subject was absolutely closed. This compelled the jury to value the logs, on Dease's claim for their value, upon the assumption that they were actually of such high quality, and on the other hand excluded all question under the counter claim as to the fact of their being inferior to the contract quality, the degree of inferiority, if any, and the amount of injury to Chapman caused by it. We think the court erred. Dease's ground of recovery as the case stood was outside of the written contract, and not on it. He claimed to have thrown it up and to have been justified in doing so, and insisted upon his right to recover upon a theory which ignored the contract as a law for the parties. How then could he appeal to the clause in question? But without dwelling on this view, we think this provision gave no power to the scalers to go into the percentage.—*Ortman v. Green, 26 Mich.,* 209. As before observed, the basis of Dease's right under the common count is the true value of the same logs he delivered, and in adjusting that value due consideration must be given to the actual quality. Hence in the estimate under the common count an allowance must be made for any insufficiency there may have been in the logs to run twenty-five per cent. to upper qualities. But this allowance being made in getting at the value of the delivered logs, under the common count, must not be made again under Chapman's counter claim. The value upon the common count is fixed apart from the special contract, though recovery would be limited

CHAPMAN v. DEASE.

by the price prescribed in the contract. But Chapman's damage to be recouped must be such as arises under the contract. Being charged with only the real value of the delivered logs, he gets them at what they were worth to him, and in so far is not damnified. By the special contract he could only get logs running twenty-five per cent. to uppers by paying nine dollars and fifty cents, and if, at the time and place of delivery, logs of that sort were worth no more, he was not damnified even if the logs delivered were of lower grade. But if such logs were at such time worth more than nine dollars and fifty cents, at which Dease was bound to deliver them for, and the logs delivered were inferior, then Chapman incurred damage under the contract ·equal to the difference between nine dollars and fifty cents and the value of such logs as were agreed for, and this is recoverable under the counter claim. And as the question of percentage is not left to the scalers, it must be ascertained by the jury, together with the amount of the difference, if any.

Chapman's failure to advance as he agreed prevents him from recouping damage for the non-delivery of the logs which were not delivered.

The rulings of the court below need not be separately noticed. They were contrary to the views we have expressed in regard to the criterion and measure of the respective claims, and must have led to an improper result. How the facts liable to be controverted will appear upon another trial cannot be anticipated.

The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.