## LEONIDAS W. SPRATT, APPELLANT, VS. MILES PRICE, ET AL., APPELLEES.

1. Where, upon a general view of the case, giving the appellant every fair construction of the facts in his favor, an application of the principles of law controlling the matters involved justifies the judgment, it must be affirmed.

2. Where, in a common law action, a defence on equitable grounds consists of matter clearly available as a defence at law, the court, without motion, should strike it out. Such a defence is admissible only when it sets up matter which in the event of a judgment at law

equity would on account of the *equities set up* give him relief against the judgment, and if a party having a good defence at law fails to plead it in the action at law equity will not grant any relief against the judgment. Quere : Whether such a defence is admissible in an action of ejectment ?. •

3. Under the statute of 1874 the lien for taxes assessed related to the first of March. Such lien attached to the *res* without regard to individual ownership, and when enforced by sale pursuant to the statute, the purchaser took a valid title in fee.

4. A purchaser at a tax sale has, during the period allowed for redemption, no estate, legal or equitable, in the land. He has a lien for the purchase money and interest allowed by the statute.

5. The owner, occupant, or other party subject to the assessment under the terms of the statute, is the proper person against whom to as·. sess a tax during the period of redemption, and if a sale for taxes thus assessed is had after the period of redemption expires, and after the purchaser at the first sale has obtained a deed, a good title in fee passes to the purchaser at the second sale. The law gives no immunity to the purchaser at the first sale.

6. The terms duty and obligation are used in reference to taxes in two senses : the first being in reference to the sovereign imposing the tax, and the second in reference to individual relations. The matter of duty to the State is fixed by the legislative enactment imposing the tax. The matter of obligations between individuals arises from the legal or equitable relations of the parties *inter se*. In neither case is an obligation or duty fixed by the mere fact of ownership in the land.

7. Every person who has or claims an estate in land has not for that reason a claim or right against every other person claiming or having an estate in the land by which his adversary claimant is bound to pay the taxes.

8. Where the tax under which a second sale was had was assessed against a mortgagor in possession during the time allowed for redemption from first sale, there was no duty upon the part of the mortgagee out of possession to the stranger who had purchased at the first sale to pay this tax, and he could bid and acquire a good title at the second sale.

9. The general rule in ejectment is that any title acquired subsequent to issue joined must be set up by a plea *puis darrein* continuance. Where, however, no injustice is done, a tax deed in the hands of the original purchaser may have relation to the day upon which the

party was entitled to it, and if such day precedes the date upon which issue was joined it is admissible under the general issue.

Appeal from the Circuit Court for Duval county. The facts of the case are stated in the opinion.

*Cockrell & Walker* for Appellant.

The tax sale at which Price became the purchaser was made necessary by his own default, he being the mortgagee of the lot, and as between him and the State, to whom the tax was due, it being his duty to pay it.

A purchase made when such a relation exists is made in wrong, and the law will conclusively presume, in circumvention of wrong, it was made in discharge of duty, not in repudiation of it. The universal principle is that a purchase made by one whose duty it is to pay shall operate as a payment only.

" Show the existence of the duty and the disqualification is made out in every instance." Cooley on Taxation, 346 ; 1 Aiken's (Vermont) Rep., 306, reported in 15 Amer. Decisions, 681 ; Blackwell's Tax Title, §399 ; 48 Miss., 209 ; 30 Ill., 102 ; 44 N. Hampshire, 475.

From the time of the assessment of the tax to the execution of the deed to Spratt, say a period of two years, it was not only Price's privilege but his duty to pay the tax. During this whole time the land which secured to him the purchase money from Comfort owed the duty to the State to pay the tax. And Price's privilege to pay the tax was secured by a covenant in the mortgage, enforcing his duty to pay it, and adding the amount to the mortgage debt. His tax title then enured to the protection, not to the destruction of the title held by the mortgagor and himself.

In the Connecticut Life Insurance Co. vs. Balte, the Supreme Court of Michigan say, through Judge Cooley : " It certainly cannot be said that the second mortgagee owes

any duty to the first mortgagee to protect his interest in the land. Neither on the other hand does the first mortgagee owe any such duty to the second mortgagee to protect his lien against the tax sale. *To the State* each of the three may be said to owe the duty to pay the taxes, and the State will sell the interest of all if none of these pay it. As between themselves the primary duty is on the mortgagor, but if he make default either of the mortgagees may pay, and one of the two must do so, or the land will be sold and his lien extinguished. * * * When, therefore, each mortgagee has the same interest in making the payment of the tax, and the same right to do so, and the same means of compelling repayment, it may well be held that a purchase by one shall not be held to cut off the right of the other, because it is based *as much upon his own default* as that of the party whose lien he seeks to extinguish."

This extract is thus liberally quoted to show that it is the duty the mortgagee owes to the State to pay the tax. The duty to pay the tax being shown, it follows that the attempted purchase by Price was in law merely a payment of the tax.

So Price regarded it, as he did not apply for a deed from the State, relying upon his old title to which he was restored by his purchase at mortgage sale, until nearly a year after the plaintiff commenced his suit.

If then it was Price's duty to pay the tax covered by the sale, under which he bought, the court erred in charging that the tax deed of latest date prevailed. This is true only when the party purchasing is under no disqualification to purchase.

But the charge asserted, as applied to the evidence, that, independent of the duty to pay the tax, the latest tax deed prevailed. Comfort himself could with as much propriety

bid in the lands at tax sale, and thereby have defeated the title of the plaintiff.

The second charge asserts that the relation of an attorney or agent *in and of itself* disqualified one from purchasing at tax sale. If this be the law it was only necessary for the so-called equitable plea to allege that at the time of the plaintiff's purchase he was the agent or attorney of Price.

If an agent or attorney pays out his own money in the acquisition of a tax title he certainly cannot be divested in law or equity of the security the legal title furnishes him for his reimbursement by any act of the principal until the money is restored him.

The plaintiff requested the court to charge the jury as follows:

" The fact that the newspaper in which the advertisement of the tax sale is made was not filed, or did not remain on file in the Clerk's office, even if it has been proved that no such newspaper was filed, or remained on file in the Clerk's office, cannot affect the title of the purchaser."

The plaintiff also asked the following charge :

" The failure of the publisher or proprietor of a newspaper in which the advertisement was published to comply with the requirements of the tax law, after the sale to the purchaser, cannot affect the title of the plaintiff."

The refusal of these charges, construed in the light of the evidence before the jury, asserts the law to be that the validity of a tax title otherwise unassailable will be affected by the failure of the newspaper publishers to file in the Clerk's office copies of the papers containing the tax advertisement.

The tax law makes no such requisition upon the publisher ; the law does not so expose the title of a purchaser

who has parted with his money to the caprice or negligence of the publisher.

. · The law under which this sale was had declares the deed shall be *prima facie* evidence of the regularity of the proceedings from the valuation of the lands by the Assessor to the date of the deed, inclusive, and the title of the purchaser, and that the validity of any sale for taxes shall only be affected by alleging and proving that the property sold was not subject to taxation, or that the taxes had been paid before such sale, or that the property had been redeemed according to law.

The U. S. Stat., (12 Stat., 640,) similar in terms, has been construed by the Supreme Court United States, 98 U. S. Repts., 517, and the act sustained. Nor is there any want of harmony between this case and the Dickinson vs. Acosta case, 15 Fla., 621, as to the points decided. Chief-Justice Randall there enunciates the unquestionable doctrine that property cannot be subjected to taxation except in pursusuance of a levy duly authorized by law, which of necessity includes the listing, valuation and distribution or apportionment of the proper amount ; and these last necessarily presuppose a taxing district defined by law.

We are content to accept the views announced in Dickinson vs. Acosta as indicating the things essential to the validity of a tax title.

The failure of the newspaper publisher to do what is required of him after the sale cannot be such an essential as affects the title of the purchaser.

The court further charged the jury that a title acquired by the defendant, after issue joined, though not set up under a plea of "*puis darrien continuance*," was available to the defendant. This we submit is error.

∴ A title in the defendant acquired after the commencement of the suit is no defence thereto. 47 Barb., 595 ;

Justin vs. Faught, 23 Cal., 237; Moore vs. Tice, 22 Cal., 513.

As the court entertained the views that an after-acquired title was available, it was bootless to discuss whether the title under tax sale was vested in Price by the certificate of purchase or by the deed.

We may admit a sheriff's deed, the court exercising control over the returns and proceedings of its own affairs, under a fiction of law to prevent injustice being done.

But this case does not admit of the application of the doctrine of relation.

*C. P. Cooper* for Appellees.

1. The deed under which plaintiff claims title to the property involved in this action being a tax deed is only *prima facie* evidence of the regularity of the anterior proceedings connected with sale of said property for taxes, and all the pre-requisites must have been complied with to make it a valid deed. Acts of Fla. 1874, Chapter 1976, Sec. 60; Dickinson vs. Acosta, 15 Fla., 615; Blackwell on Tax Titles, 401.

2. The tax law of 1874 provides that " the proprietors or foreman of any newspaper publishing any notice of sale shall forward a copy of *each number* of his paper containing such notice to Clerk of the county." This is required in order that the evidence may be kept that the notice was published the number of times required by law, and all things connected with notice must be strictly complied with. Act of Fla. 1874, Chap. 1976; Sac. 50; Blackwell Tax Titles, 237, 239, 274; Cooley on Taxation, 332 and note, 334, 337; Burroughs on Taxation, 293, 294.

3. The tax rolls show that this property was assessed as *Miles Price's* for taxes of 1875. Price sold to one Comfort September 17, 1875. Tax rolls show that thereupon the

assessment was stricken out to Price and these words written : " Sold to Comfort." Collector thereby relieved Price from paying the taxes, but subsequently *advertised* the *property as " Price's,"* and sold May, 1876, when Comfort was the owner. There was no proper assessment and no notice to Comfort, the sale is therefore illegal, and the plaintiff's .deed obtained thereunder is void. Blackwell on Tax Titles, 114, 237, 274 ; Cooley, 259, 260; 334.

4. The testimony shows that F. F. L'Engle, who bought in the property and assigned his certificate to the plaintiff, who obtained his deed thereon, was at the time of said tax sale the agent of Comfort, the owner, and of Price, the mortgagee, and had their funds in his hands to pay the taxes. A sale to him was therefore void, and he obtained no title and assigned none to Spratt. Blackwell Tax Titles, 440 ; Burroughs' Taxation, 355 ; Cooley's Taxation, 347.

5. Equitable defences, if specially permitted by the statute law of the State, can be pleaded in an action of ejectment, and our pleading and practice act does so provide. Laws of Florida, Chap. 1096, Sec. 69 ; Tyler on Ejectment, 565, 79a ; Murray vs. Walker, 31 N. Y. Reps., 339.

6. L'Engle being at the time of his said purchase of said property the agent and attorney of Price in the matter of protecting his interests in said property by paying taxes, &c., occupied such a fiduciary relation to Price that if he obtained any title, and if said sale were a valid sale, said title was in trust for Price, whether he bought with his own or Price's money, and L'Engle but assigned to Spratt, if Spratt and L'Engle were not partners and both Price's attorney's and agents, this trust and any title held by Spratt is in trust for Price. Perry on Trust and Trustees, 139, and cases cited in note 3 ; ibid., 142, and cases in note 3 foot of page.

7. Price bought this property in suit from I. D. Hart in

1859. He held same until September, 1875, he then sold to one J. J. Comfort, and took a mortgage for part of the purchase money. L'Engle bought at tax sale 5th May, 1876, and assigned certificate to plaintiff, who obtained tax deed on 9th of June, 1877. Price to protect himself purchased the property at tax sale in July, 1877, (also under foreclosure September, 1877.) If Spratt obtained any title by his tax deed, it divested Price of any interest in the property, and he could purchase at a tax sale. Only those who have existing *interests* in the property or stand in some fiduciary relation, have the duty of paying the taxes and cannot obtain title by purchase at tax sale. Cooley on Taxation, 346 ; Burrough's Taxation, 352.

8. The expiration of the time allowed for redemption having arrived July, 1878, Price had a vested right from that date to a deed, and though his tax deed was obtained after the commencement of this suit, it relates back to said date of expiration of the time for redemption, and may be put in under the plea of the general issue. Jackson vs. Ramsey, 3 Cow., 75 ; Vin. Abr. Tit. Relation, 290; Burroughs' Taxation, 329 ; Blackwell's Tax Titles, 428, 429 ; Tyler on Ejectment, 470.

9. If matter which ought to have been pleaded is admitted in evidence by consent it will be as effectual as though pleaded. See Jackson vs. Demont, 9 Johnson's Reports, 95 ; Tyler on Ejectment, 465.

10. Objections to the admissibility of evidence must be made before it goes to the jury, and the grounds of those objections must be specifically *pointed out;* it is too late after the evidence is read to the jury. McKay vs. Lane, 5 Fla., 268 ; Carter vs. Bennett, 6 Fla., 337.

11. Titles acquired since the commencement of the action may be shown in defence. Tyler on Ejectment, 757 ; Mun-

sel vs. Sanford, 1 Root Conn. Rep., 257, in U. S. Digest, V., 155.

12. The plea of not guilty puts in . issue .the *title* .to the land, and under it .the defendant may show all and every evidence of *title* in himself, or any other than the plaintiff. Laws of Florida, Chap. 999; Roberts vs. Pillow, 1 Hempt's Rep.; 674; U. S. Digest, Vol. V., 179; Zeigler ·vs. Fisher, 3 Penn., 367.

Price now holds the property under .foreclosure (and sale) September, 1877, of the mortgage taken by him from Comfort for the purchase money of said property and also under his tax title .of July, 1877.

If Price's tax .deed had have been objected to at the *time of its introduction*, because it was not pleaded "*puis. darrien continuance*," then defendant's attorney could have amended his pleadings so as to get in evidence said tax deed, but plaintiff's attorneys having only made their objection in argument it prevented defendant's attorney from so amending for the purposes of that trial.

MR. JUSTICE WESTCOTT ·delivered the opinion of the court.

This is an action of ejectment brought in the Circuit Court for Duval county by the appellant, Spratt, against .the respondents ·to recover certain real estate with mesne profits. Defendants pleaded .the general issue and a special plea on equitable grounds. Plaintiff took issue on the first and demurred to the second. The demurrer was sustained with leave to defendants to amend. This they did and interposed a plea on .equitable grounds. After trial and hearing, and motion for new trial. overruled, there was judgment for the defendants. From .this judgment plaintiff appeals.

The equitable plea sets up substantially that Miles Price,

on the 14th of September, A. D. 1875, was, and still is, the
owner of the land ; that on that day he sold it to Jonathan
J. Comfort, taking from Comfort a mortgage for a large
part of the purchase money ; that he foreclosed his mort-
gage and bought in the property under a decree rendered
July 14, 1877 ; that except the time embraced between the
14th of September, A. D. 1875, and the 14th of July, A.
D. 1877, he has always owned the land in fee simple ; that
on the 5th of May, A. D. 1876, Leonidas W. Spratt and
Francis F. L'Engle were partners, and were the attorneys
and agents of Miles Price and of Jonathan J. Comfort in
respect to the property in controversy ; that said firm for
valuable consideration agreed to protect the interests of the
said Price and Comfort by paying for them all taxes assessed
against said property whenever the said P. & C. were unable
to do so, and to buy in said property at tax sale if necessary
to protect it, and to do all things necessary to protect the in-
terest of Miles Price as mortgagee, Miles Price agreeing to re-
pay them all sums which they might advance ; that on the 5th
of May, A. D. 1876, the property claimed was sold at a tax
sale by the Collector of said county as the property of Miles
Price, and that said Miles Price procured the said firm of
Spratt & L'Engle to purchase said property for him, and
that F. F. L'Engle purchased the same; that the certificate
of sale, without the knowledge of defendant, was issued in
the name of F. F. L'Engle, and that the said L'Engle after-
wards assigned the certificate to plaintiff, and that after-
wards, on the 9th of June, A. D. 1877, the plaintiff ob-
tained in his own name a tax deed for said property ; that
since the date of the tax sale Miles Price has paid to the
said firm of Spratt & L'Engle amounts of money aggregat-
ing about the sum of eight hundred and sixty-six dollars to
reimburse them for the sum advanced at said tax sale.   De-

fendants in this plea allege that the claim now made by Spratt is based upon this tax title.

We first dispose of the matter of this plea. The Circuit Court, upon the motion of plaintiff, or in the absence of such motion, should *sua sponte* have stricken it out. This plea as a defence to the action was a defence at law, avail-able under the plea of the general issue. To permit it is to simply embarrass the trial and encumber the record. There is no doubt of the power of the Judge in a plain case to strike it out. 17 Fla., 631. Viewed in the light of a special plea, setting up a defence at law, such should have been the action of the Circuit Court. Viewed in the light of an equitable defence under the statute there is nothing in it. These equitable defences in common law actions are available only where they set up equities, which in the event of a judgment at law would entitle the defendant to relief against such judgment. Sec. 69, Chap. 1096, Laws. Here this defence is available at law, (26 Wis., 614; 7 Watts, 472; 34 Mich., 380; Cove on Tax., 347,) and in the event of a judgment equity would not enjoin the judgment for that reason. 2 Barb. Chy. Rep., 108; 3 John. Chy., 356; 94 U. S., 652.

We would remark further, in order to save the question, that under the English common law procedure act "defences on equitable grounds" are not pleadable in actions of ejectment. Here there may be a different rule in consequence of a want of similarity in the rules regulating pleading in ejectment under the English statutes and the law regulating it here. But this question is not material as the plea is plainly subject to the objections mentioned.

Thus disposing of these preliminary questions we reach the merits of this controversy.

The defendant, Price, was the admitted owner of the land on the first of March, A. D. 1875, the facts which de-

termined the person against whom was to be made the assessment for that year.   Under the law the tax was properly assessed against him.   Sec. 6, Chap. 1976, Laws.

· On the 14th of September, A. D. 1875, Price sold the land to Comfort, taking a mortgage for the purchase money.   On the 5th of May, A. D. 1876, the land was sold for the taxes of 1875, and F. F. L'Engle became the purchaser.   Before the date for redemption expired, L'Engle assigned and transferred his certificate of sale to the plaintiff, Leonidas W. Spratt, and he, Spratt, on the 9th of June, A. D. 1877, received a tax title or deed from the County Clerk for the property.

This is the case which the plaintiff insists is made on his behalf.   In reply to this case the defendant insists that L'Engle and the plaintiff were his agents under an agreement to pay these taxes for which the land was sold on the 5th of May, A. D. 1876, and that no title passed to plaintiff because the proprietor of the newspaper publishing the notice of sale failed to forward a copy of each number of his paper containing such notice to the Clerk of the county. This is the case of the defendant so far as it consists of an assault upon plaintiff's title.   In addition to this, however, the defendant insists that, admitting the validity of the deed of the plaintiff, he has as against him a better title because of a subsequent purchase by him at a tax sale for the taxes of 1876.

The tax for that year was assessed against Price's mortgagor, Comfort, the assessment being made at a time when the plaintiff or his assignor was the holder of the certificate of sale for the taxes of 1875.   Plaintiff's tax title was dated the 9th of June, A. D. 1877.   The sale under the assessment against Comfort, at which Price purchased, was on the 3d of July, 1877, *after the date of the deed absolute to Spratt.*

The plaintiff insists that no title passed to Price under this second sale, because, as mortgaged, it was his duty to pay the tax, and that his purchase was simply a payment.

Under this state of facts the defendant insists that while as to Comfort he may have occupied the relation of mortgagee, that as to Spratt and his deed and to the land he was a stranger, if the deed to Spratt was effectual to convey the whole estate.

If this position be correct, then it is an end of the case. To its consideration we address ourselves. The determination of this question involves an accurate appreciation of the nature of the revenue law of 1874, as well as the relation occupied by those acquiring interests under sales for taxes had thereunder.

Under the provisions of this act the tax was assessed against the lands, not against the interest or estate of the owner or party in possession. Under the provisions of section 6, "all lands shall be assessed in the county" * * * and "lands owned by one person and occupied by another may be assessed in the name of the owner or occupant," and those "not occupied may be assessed as non-resident." The advertisement required under section 50 of the act is notice of sale to pay the amount of taxes "duly assessed against said lands." The interest passed by the deed after tax sale is the fee in the land, and the sale had is to be of "so much of each parcel of land as shall be sufficient to pay the taxes, costs and charges thereon." It is also true that in this statute there is nothing requiring a sale of the personal property before resorting to the land. The tax assessed under this statute constituted a lien upon the land. 106 Mass., 30 ; Cooley on Taxation, 305 ; Hilliard on Tax., 402 ; 2 Bay., 248. This lien attached and had relation to the time at which the assesment was made, that date being under this statute the first of March.

This land, in the year 1875, being assessed to its then owner, Miles Price, the defendant, the lien attached on the first of March, A. D. 1875. 45 Mo., 130; 33 N. J., 177. What was the nature of this lien, and to what extent did the subsequent sale of the land by Price to Comfort, and Comfort's relation of mortgagor and owner, and Price's relation of mortgagee as between each other have upon the lien which thus attached?

Of the nature of this lien the Supreme Court of the United States says: " The lien for taxes does not stand upon the footing of an ordinary incumbrance. It attaches to the *res* without regard to individual ownership, and when it is enforced by sale, pursuant to the statute prescribing the mode of assessing and collecting them, the purchaser takes a valid and unimpeachable title." 93 U. S., 428. Spratt's title, therefore, was absolute, and relieved of any estate of Price or Comfort.

Under our statute any person claiming any of the lands, or any interest therein, may redeem within one year after the sale. In this case there was no redemption. During that period, and before the title was made to Spratt, the tax for 1876 was assessed against the mortgagor and occupant, Comfort. This tax, as the preceding one, was a lien upon the land, because it was assessed according to law against the owner or occupant. Spratt's relation before his title became absolute was that of a party entitled to a lien for his purchase money and interest as prescribed by statute. He had no title, legal or equitable, during the period allowed for redemption. He could not bring trespass. He was not entitled to rents and profits. As between himself and the owner he could not enforce this lien. Under the statute this lien, by non-redemption and the execution of a deed to the purchaser, would develop into a legal title, or upon the expiration of the year without a deed into an

equitable title. The taxable estate during this period remained in the owner or occupant having the right to redeem. Some of the cases sustain the view that had there been another sale for taxes assessed before the period for redemption had expired, the purchaser at the prior sale (Spratt) could have bid at the sale, acquring all the right remaining in the parties entitled to redeem. 4 Mich., 579; Hilliard on Taxation, 532. The first purchaser would have been under no obligation to pay this second tax. His relation and rights were fixed by the statute, and any interest acquired by a purchaser at a subsequent tax sale during the period when the right to redeem existed, and when the statute gave him a lien with right to a deed after one year, must have been subordinate to this right. In other words, the purchaser at the subsequent sale would have acquired the right to redeem. Tweed vs. Metcalf, 4 Mich., 587; 6 Watts, 512; 33 Penn. State, 94; 26 Ark., 48; 31 Cal., 269; 15 Minn., 245; 55 Penn. State, 188; 1 Doug., (Mich.) 276. What we say in reference to the interest acquired at a second tax sale before the period for redemption under the prior one has expired is not here involved. A reference to this subject is made simply to more clearly define the relation of the purchaser at the first sale to the land.

Spratt, by his deed of June 9, 1877, having acquired an estate divested of any interest of Price or Comfort, the only remaining question is, what was the effect of the second sale, the defendant, the purchaser at such sale, Price, being at the time of the assessment the mortgagee, his mortgagor, Comfort, being the occupant against whom the assessment was made? It is insisted by plaintiff that it was the duty of Price, as mortgagee, to pay this tax, and that his purchase at the tax sale simply operated as a payment. While as between mortgagor and mortgagee such a pur-

chase may enure as a payment under some circumstances, as in a case where he has contracted to pay the tax, or where the mortgagee is in possession, yet "generally a mortgagee not in possession is under no obligation to pay the taxes on the mortgaged property, and there is no reason why he may not acquire title to the property by a fair purchase at a tax sale." Jones on Mortgages, §713.

The position taken by the appellant here is, that it was the duty of Price to pay this tax, and that his purchase under the circumstances operated simply as a payment. If such was his duty, within the meaning of the authorities defining the matter of duty in this connection, the position is well taken.

At the time of the assessment here, Comfort, his mortgagor, was in possession. In contemplation of the revenue law he was the owner in possession, and the assessment was made against him in strict conformity to the statute. The term duty in this connection must be given that signification which the authorities give it. In reference to the payment of taxes the terms duty and obligation are used in two senses, the first being in reference to the sovereign imposing the tax, the second being in reference to individuals. The matter of duty to the sovereign is fixed by the legislative enactment imposing the tax. The matter of obligation to individuals arises from the legal or equitable relation of the parties. In neither case is the measure of the obligation fixed by the mere fact of an interest or estate in the land.

A simple tenant at will, a party with a naked possession, can be the subject of an assessment if such be the statute; and so far as individual obligations are concerned they may arise out of fiduciary relations, and may be so assumed by persons having no interest or estate in the land, not even possession, as to prohibit their becoming a purchaser at a

tax sale.  We will examine the cases bearing upon each relation so far as they affect this case.

In the case of Blackwood vs. Van Vliet, 30th Michigan, 121, Judge Cooley for the court says: "To preclude any person from making and relying upon a purchase of lands at tax sale there must be something in the circumstances of the case which impress upon him a duty to the State to pay the tax, or something which renders it inequitable as between himself and the holder of the existing title that he should make the purchase." In his work on Taxation Judge C. on several occasions uses the terms " duty to the government " in this connection, and looking to his work alone we confess we were at a loss to understand precisely what he meant. To the opinion of this eminent jurist great respect-is due, whether that opinion be as a Judge or text writer, and it is fortunate that we have a judicial opinion of his in which he interprets this language, thus leaving no doubt as to his view in the premises.  We see this language used in the case above cited.  In that case he says also : " While a party is not to build up a title on his own neglect of duty, yet if he can show he owes no duty in the premises he is as free to become a purchaser at a tax sale as any other person." He then proceeds to determine what constitutes this " duty to the government," and says : " Where lands are occupied our statutes have always required them to be assessed to the owner or occupant, and where thus assessed it becomes *a duty which the person assessed* owes to the State to make payment.  If not occupied the owner owes to the State a like duty. * * * * It may also have been assessed as non-resident, in which case the duty to pay would rest on the owner." * * * " *The obligation to the State was fixed by the assessment.*" In his work on Taxation, speaking of the cases announcing the doctrine that mere possession where the tax was assessed

fixes upon the possessor the duty to pay and precluded him from becoming a purchaser at a sale for taxes, after remarking that the reason for such a view is not made very clearly apparent in the decision which he is criticising, he says: "It seems to us that it is deserving of more consideration whether where parties stand to each other in the position of adverse claimants to land either of them can insist that the other shall discharge a *duty to the government* for his protection." Of a purchase by an adverse claimant generally he says: "The State then not being wronged in the purchase it would seem that whatever individual objects to it ought to be able to point out how and in what particular it wrongs him."

The Supreme Court of Pennsylvania announce the general proposition that an individual not standing in any relation of trust, and implicated in no fraud as to the owner of the land, may acquire a title by tax sale, and that his holding a prior defective title will not prevent his purchase. 27 Penn. State, 160, 165.

The Supreme Court of Wisconsin, while declaring in one case (30 Wis., 102,) that a person holding the legal title as trustee cannot purchase certificates of tax sale and claim as against his *cestui que trust* the interest allowed by the statute, it refers in another case with approval to cases holding that such is not the relation between mortgagor and mortgagee, among which cases is that of Harrison vs. Roberts, 6 Fla., 711, and the head note in the last named case in Wisconsin, 20 Wis., 586, states the law to be that "a mortgagee (not in possession) may acquire title as against the mortgagor by purchase under a superior lien either at a tax sale or a sale under a prior judgment."

In the case of Waterson vs. Devoe, 18 Kan., 223, the Supreme Court of Kansas hold that "a mortgagee not in possession of real estate is under no obligation to pay the taxes

on the mortgaged premises," and that " the mere relation
of mortgagor and mortgagee will not prevent the person so
related from acquiring title to the mortgaged premises by
purchase at a tax sale." This was the case of a mortgagee
who, prior to his purchase of the tax certificate, had fore-
closed his mortgage. This case is well considered and the
opinion able. The defendant, Price, in the case at bar had
filed his bill to foreclose his mortgage, and had thus as-
sumed an adversary position against his mortgagor when
he purchased at tax sale.

The only other cases we find having a bearing upon this
subject are cases from Illinois and New York. Of the fol-
lowing cases from Illinois, Judge Cooley, in his work on
Taxation, remarks : " The Illinois cases are very emphatic
that a mortgagee, like a trustee, cannot affect the rights of
the mortgagor by purchasing the property at a sale for de-
linquent taxes accruing on the premises." After careful
examination of these cases we cannot agree with this con-
clusion. We think that they do not sustain the broad
proposition that as between mortgagor and mortgagee the
latter cannot acquire a good title through a tax sale. In
the case reported in 26 Ill., 507, the court, in discussing the
question whether a payment of taxes by the mortgagee
shall or shall not enure to the benefit of the mortgage, the
question being as to its effect upon the statute of limita-
tions, say : " After a foreclosure, or an effort to foreclose
the mortgage by decree or deed, which purports to have that
effect, the presumption then arises that all acts done in ref-
erence to the property are done under a claim of ownership
by the mortgagee." In the latter case reported in 44 Ill.,
367, the court say : " The mortgagee in possession would
be bound to pay the taxes," and speaking generally of the
relation it is said that " we do not say that a mortgagee
can in no case buy in an outstanding title and hold it

against the mortgagor without a right of redemption by the latter, but we do say that a mortgagee cannot buy in an outstanding title under an arrangement with the mortgagor, that it is to be held like the mortgage, subject to redemption, and when the title is acquired turn around and insist that he has purchased as a stranger." In this case the purchase of the outstanding title had been made by the mortgagee " with the consent " of the mortgagor, under an agreement that " he was to have further time to redeem."

Of the following case in New York Judge Cooley says : " It is not very clear how far Williams vs. Townsend, 31 New York, 411, was designed to lay down a contrary doctrine," meaning the doctrine of the Illinois cases as understood by him. We cannot coincide with this commentary.

The case was that of a mortgage providing that the mortgagor should pay the taxes and assessments upon the mortgaged premises, and in default of so doing that the mortgagee might discharge the same and collect them as a part of the mortgage. The Court of Appeals decide that the mortgagee might at his option pay the tax or purchase at a tax sale, the court holding that the principle that a person who is placed in a sitution of trust or confidence in reference to the subject matter of a sale, or has a duty to perform which is inconsistent with the character of a purchaser on his own account, does not apply to a tax sale purchase by a mortgagee, saying that the mortgagee " had no duty to perform to the plaintiff " (the mortgagor) " or toward the mortgaged premises that precluded her from buying at the tax sale."

The necessary conclusions we reach in the case are:

First. That Price, by virtue of his relation of mortgagee to this land, the assessment being made against Comfort, the mortgagor and occupant, as required by the statute, owed

no duty to the State which required him to pay the tax. Second. That as to Spratt, in whom the legal title vested by his purchase, Price was a stranger, occupying no fiduciary relation, and entirely competent to purchase his (Spratt's) interest and estate in the land at a tax sale. That every man who claims an estate in the land has a claim or right against every other person making a claim by which his adversary claimant is bound to pay the taxes is not the law. In this view of the case the questions of agency and proof of advertisement are immaterial, and we say nothing of them.

This disposes of the objection of plaintiff to the title of defendant. There is but one other matter requiring attention: when the tax deed of Price was offered in evidence it bore date since issue joined in this case. There was no plea *puis darrien* continuance, and there was an exception for want of " relevancy and pertinency to the issue joined." The general rule in ejectment is unquestionably that any title acquired subsequent to issue joined must be set up by a plea *puis darrien* continuance. 1 Wallace, 374 ; 7 John., 194 ; 9 ib., 60 ; 11 ib., 424 ; 19 ib., 168 ; 3 Strob., 504. In this case the purchase of Price was on the third of July, 1877, and he was entitled to a tax deed one year thereafter if there was no redemption. This would have been before issue joined. Under the statute it was the duty of the purchaser to pay and of the Collector to demand and receive the money when the sale was made, and the presumption here is that such payment was made.

It is thus evident, unless the deed related back to the day upon which the party was entitled to it, that there was error in this action of the court. If, however, it did so relate the defence was available under the general issue. 3 Cow., 75. The doctrine of relation is a fiction of law adopted by the courts solely for the purposes of justice, and

is only applied for the security and protection of persons who stand in privity with the person that initiated proceedings for the land, and acquired the equitable claim or right to the title.   9 Wall., 315 ; 4 John., 230 ; 12 John., 140.   The limitation to its operation is that it shall do no wrong to strangers.   4 John., 234.   The person here claiming is the party himself who initiated the proceeding, and there is no injustice to Spratt, as his deed remains intact, and if there is a loss to him it is the result of his own neglect to redeem.   After the expiration of the year from the sale Price had an equitable title to the land.   Giving effect to the doctrine of relation, in an action of ejectment, so as to perfect a clear equitable title, not antedating by such relation the time of the acquisition of the legal title claimed adversely, but leaving it all the validity which its holder claims for it, cannot be unjust.   The holder of the legal title is left where he can recover all he is in equity entitled to.   For these reasons we think that the doctrine of relation is applicable, and that the deed was admissible under the general issue.

In ejectment it is required that the plaintiff shall not only have title when the suit is brought, but when it is tried also.   32 Penn. State, 378.   That is this case.   Here under the operation of the doctrine of relation, admitting for the sake of argument the title of plaintiff at the commencement of the suit, the defendant had the title at the time of trial.

Where, upon a general review of the case, giving the appellant every fair construction of the facts in his favor, an application of the principles of law controlling the matters involved justifies the judgment, it must be affirmed.   May's Executors vs. Seymour, 17 Fla., 730 ; 5 Fla., 268, 465 ; 6 Fla., 482 ; 8 Fla., 391.   This is that case.

Judgment affirmed.

The preceding opinion was delivered at the January Term, A. D. 1881. The appellant having obtained leave filed the following petition for a rehearing after the adjournment of the term :

The appellant respectfully petitions the court for a rehearing upon the following points :

1. The duty of Price to pay the tax assessed upon the lot in controversy in 1876.

2. The doctrine of relation back applied to Price's deed acquired under a purchase at tax sale for the tax so assessed, making said deed admissible under the general issue.

Judge Cooley, in Connecticut Life Insurance Company vs. Butte, reported in the Central Law Journal January 28, 1881, page 86, refers to the case of Blackwood vs. Van Vliet, 30 Mich., 118, holds that a mortgagee, as well as the mortgagor—there were two mortgagees in this case—owes to the State the duty of paying the tax, and that the tax title the mortgagee acquires, being based in part upon his own default, " simply enures to the protection not the destruction of the regular title."

" It certainly cannot be said," says he, " that the second mortgagee owes any duty to the first mortgagee to protect his lien as against tax sale. Neither on the other hand does the first mortgagee owe any such duty to the second mortgagee, *or to the owner.* To the State each one of the three may be said to owe the duty to pay the taxes, and the State will sell the interest of all if none of the three shall pay. As between themselves the *primary* duty is on the mortgagor ; but if he makes default either of the mortgagees may and one of the two must do so, or the land will be sold and his lien extinguished. But in such case where each has the same right, payment by one is allowed to increase the amount of his incumbrance."

"When therefore each mortgagee has the same interest in making payment and the same right to do so, and the same means of compelling repayment, it may well be held that a purchase by one shall not cut off the right of the other, *because it is based as much upon his own default* as that of the party whose lien he seeks to extinguish." Here is a clear unqualified recognition of the *principle* upon which Price's purchase at tax sale operated only as a payment. In the case at bar Price was, by the provisions of his mortgage, authorized expressly to increase the mortgage debt by the amount of taxes which he should be put to pay.

This court in its reasoning conclusively shows that during the period for which the assessment under which Price purchased was made, Spratt had no title, legal or equitable, to this lot; it was subject to be retained in Comfort or Price during this interval by either paying off the incumbrance.

In this case, during the period for which the assessment under which Price purchased was made, the interest of Price in this lot was greater than that of Comfort, as Comfort was insolvent, and the lot, the *only* security Price had for the debt, was not worth the amount of the debt secured by it. The duty which Price *owed* to the State for its protection of this property was greater than the duty which Comfort owed for its protection during this interval, as he (Price) had the greater interest. The duty which Price owed for its protection of this property during this interval is expressed in the tax levied on the lot as his contribution to the expenses incurred by the State in its protection, and was actually using this machinery of the State for the recovery of the lot.

The amount then that Price paid on the so-called tax purchase was simply an expression of the amount which ought to have been contributed by him to the State for

the protection of the rights which he was seeking to enforce.

Now to hold that *this* payment to the State operates to reinvest Price with the title he had previously forfeited to the State, or Spratt claiming under the State, shocks the moral sensibilities again.

·The doctrine of relation back is a. legal fiction never used to promote injustice. When Spratt began the suit he had no conception that Price had a certificate of tax sale; in fact he had no deed when he tendered the general issue on Spratt's declaration. Spratt's attorneys were not informed that a defence would be made under the general issue on a tax deed acquired after the issue; they had no opportunity of ascertaining, nor do they know now whether the assessment under which Price purchased was regular.

To affirm this case is to put the sanction of this court upon the admission of evidence operating a surprise against which no degree of vigilance, forecast or preparation could guard.

Your petitioner submits that the case decided is one of first impression in the State of Florida, and the decision is erroneous in holding— ·

First. That a mortgagee who is permitted by law to *redeem from* tax sale the mortgaged lands can by *purchase* at tax sale acquire the mortgaged property.

Second. In affirming the propriety of admitting in evidence a tax deed acquired by defendant *after* issue joined, without a plea of *puis darrien* continuance, under the circumstances of this case.

· MR. JUSTICE WESTCOTT delivered the following opinion on the petition for rehearing at the June Term, A. D. 1881:

In the opinion in this case we reviewed all the cases we

could find having a bearing upon the questions involved. The principles announced in the case of the Connecticut Mutual Life Insurance Company vs. Butte, decided by the Supreme Court of Michigan at January Term, A. D. 1881, of that court, which case was not then before us, it is insisted discloses the error of our conclusions in this case. We examine that case. It was an action of ejectment by a first mortgagee against a second mortgagee claiming under a tax title acquired by second mortgagee's agent after foreclosure and sale under the second mortgage, the first mortgagee having subsequently foreclosed and purchased the property. The court assimilate the case to that of one tenant in common purchasing at a tax sale the interest of his co-tenant, and remark that "it is no doubt true that a second mortgagee is under no obligation to protect the first mortgagee, and that the real point in controversy is whether, if the second mortgagee pay the taxes or bid off the land, the payment or purchase will not *ipso facto* constitute a protection," and the decision is that when the second mortgagee (the party purchasing in that case,) is in a position to add the amount of the purchase to the amount of his mortgage lien, and the first mortgagee assents thereto, then the purchase should be treated as a payment only, that the first mortgagee could not recover in ejectment without a tender of repayment of the tax, and that such tender involved the admission that the second mortgage was a living unextinguished lien. The court say, however, that if this second mortgage is destroyed by the subsequent foreclosure proceeding of the first mortgagee there was no equity entitling the first mortgagee to insist that the purchase was a payment, and the tax deed would be sustained, and that if the first mortgagee denied the existence of the second mortgage, there was nothing to preclude the second mortgagee from insisting that he held the tax title

as any mere stranger to the title. We have stated the case very fully in order that the great difference between it and the case at bar may be seen. When Price here purchased at the tax sale, he was, so far as Spratt was concerned, a stranger to the title. He was not a mortgagee as to Spratt, for Spratt's claim is that he held then the title discharged of Price's mortgage lien. If Spratt got any title it was free from this lien, as he was a stranger to the title to Price, the mortgagee, and to Comfort the mortgagor. Spratt does not here propose to tender Price the money he has paid, nor does he admit that Price's mortgage is now a subsisting lien. Spratt himself was no mortagee, either first or second. He purchased at a tax sale, which he contends destroyed any mortgage lien, and it certainly would be very strange indeed if he can claim that Price was a mortagee whenever it operated for his, Spratt's, benefit, but not a mortgagee when it is to result in his, Spratt's, injury. It is true that in this case in Michigan, Judge Cooley, speaking of the relations of first and second mortgagees and mortgagor to the State, remarks that " each one of the three may be said to owe the duty to pay the taxes, and the State will sell the interest of all if none of the three shall pay." As applicable to that case, such a general remark may or may not be the subject of adverse criticism. It may be within the line of thought which its peculiar circumstances inspired, but it is not, and cannot be, applicable to this case, so different in its facts that the peculiar equities announced in the Michigan case cannot be operaative. Again, this language, if given the signification which appellant contends for, is certainly in conflict with the ideas of " duty to the State," as announced by the same court in the case of Blackwood vs. Van Vleit, 30 Mich., 123, where the particular matter was the subject of its consideration.

We had occasion in the case of Gorton vs. Paine, decided at last term, to consider the relation of a second mortgagee purchasing a tax title after foreclosure of his mortgage to the first mortgagee, and we refer to that case for our views upon the subject. As to the relation of a mortgagee out of possession, under no contract to pay the taxes to the State and to the mortgagor in possession, from which it is sought here to make Price, by his purchase at a tax sale, pay a tax due upon the then property of Spratt, we will repeat that he owed no obligation to the State or to his mortgagor to pay the taxes upon the land. He was, or should have been, taxed upon the security which he held. Lamar vs. Palmer, Collector of Revenue, 18 Fla. To pay this is the extent of his legal duty. The mortgaged land may be valued at ten thousand dollars, and the mortgage be for five hundred. The tax against the mortgage is for the latter sum. This is the extent of his interest. True it may be that a sale for the tax levied against the land of the mortgagor would destroy this security of the mortgagee, and it is on account of this resulting loss that some of the courts hold that he may pay the tax before sale, and the statute gives him a right to redeem after sale, and not because of any " *duty* " that he owes either to the State or to the mortgagor which requires him to pay a tax due by a person other than himself. As to the matter of relation of the deed to the day the party was entitled to it, we can only repeat what we have said in the opinion. From the day he was entitled to the deed he had the equitable title. His purchase was at public sale and the facts which constituted the basis of the action of the court were matters readily ascertainable by the appellant.

The rehearing is denied.